J. S23014/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| LARRY WILSON, | : | No. 782 EDA 2013 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order, January 31, 2013,
in the Court of Common Pleas of Bucks County
Criminal Division at No. CP-09-CR-0002838-2003

BEFORE:  FORD ELLIOTT, P.J.E., LAZARUS AND WECHT, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:    **FILED AUGUST 11, 2014**

Larry Wilson appeals from the order of January 31, 2013, denying his

PCRA[1] petition.  We affirm.

> Appellant, a PCP addict, stabbed his sister's roommate in the neck with a knife during a visit to their apartment, fatally wounding him.  Appellant's sister testified appellant was in a trance-like state for the majority of the visit and had continuously stared at the victim in an angry fashion.  Appellant stated to police that he killed the victim because the demons inside him told him to do so.  Appellant's urine and blood tested positive for small traces of PCP and marijuana.

***Commonwealth v. Wilson***, No. 1783 EDA 2004, unpublished

memorandum at 1-2 (Pa.Super. filed September 22, 2005).  Following a jury

trial, appellant was found guilty of first-degree murder, criminal trespass,

---

[1] Post-Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.

and possession of an instrument of crime. On December 22, 2003, appellant was sentenced to life imprisonment for first-degree murder and concurrent sentences for criminal trespass and PIC. This court affirmed judgment of sentence on September 22, 2005; and on May 1, 2007, our supreme court denied allowance of appeal.

Appellant filed a timely **pro se** PCRA petition on April 11, 2008. Counsel was appointed and filed amended petitions on appellant's behalf. An evidentiary hearing was held on October 3, 2012, at which both appellant and trial counsel testified. On January 31, 2013, the PCRA court denied the petition. On February 27, 2013, appellant filed a timely notice of appeal. Appellant has complied with Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A.; and the PCRA court has filed an opinion, relying on its January 31, 2013 memorandum denying PCRA relief.

Appellant has raised the following issues for this court's review:

> I. Whether the trial court erred by denying [appellant]'s claim for [PCRA] relief where trial counsel failed to convey a plea bargain offered by the Commonwealth prior to trial[?]
>
> II. Whether the trial court erred by denying [appellant]'s claim for [PCRA] relief where trial counsel failed to present evidence of Dandy Walker Syndrome[?]
>
> III. Whether the trial court erred by denying [appellant]'s claim for [PCRA] relief where trial counsel failed to call character witnesses on the Appellant's behalf[?]

IV. Whether the trial court erred by denying [appellant]'s claim for [PCRA] relief where trial counsel failed to call the Appellant as a witness at his trial[?]

V. Whether the trial court erred by denying [appellant]'s claim for [PCRA] relief where [trial counsel] failed to permit the Appellant to participate in his defense at trail [sic][?]

VI. Whether the trial court erred by denying [appellant]'s claim for [PCRA] relief where [trial counsel] failed to raise an objection and failed to request that the jury to [sic] consider Voluntary Intoxication as a defense[?]

Appellant's brief at 4.

Initially, we recite our standard of review:

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. ***Commonwealth v. Halley***, 582 Pa. 164, 870 A.2d 795, 799 n. 2 (2005). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. ***Commonwealth v. Carr***, 768 A.2d 1164, 1166 (Pa.Super.2001).

***Commonwealth v. Turetsky***, 925 A.2d 876, 879 (Pa.Super. 2007),

***appeal denied***, 940 A.2d 365 (Pa. 2007).

"To prevail on a claim alleging counsel's ineffectiveness, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness." ***Commonwealth v. Wallace***, 555 Pa. 397, 407, 724 A.2d 916, 921 (1999), citing ***Commonwealth v. Howard***, 538 Pa. 86, 93, 645 A.2d 1300, 1304 (1994) (other citation omitted). In

order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a "'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Commonwealth v. Kimball*, 555 Pa. 299, 308, 724 A.2d 326, 331 (1999), quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A "'[r]easonable probability' is defined as 'a probability sufficient to undermine confidence in the outcome.'" *Id.* at 309, 724 A.2d at 331, quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

*Commonwealth v. Jones*, 811 A.2d 1057, 1060 (Pa.Super. 2002), *appeal denied*, 832 A.2d 435 (Pa. 2003). "We presume counsel is effective and place upon Appellant the burden of proving otherwise. Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004) (citations omitted).

In his first issue on appeal, appellant claims that trial counsel, Ann Faust, Esq., was ineffective for failing to communicate a plea offer of third-degree murder.

Generally, counsel has a duty to communicate plea bargains to his client, as well as to explain the advantages and disadvantages of the offer. Failure to do so may be considered ineffectiveness of counsel if the defendant is sentenced to a longer prison term than the term he would have accepted under the plea bargain. Where the PCRA court's determination of credibility is supported by the record, we will not disturb it on appeal.

J. S23014/14

*Commonwealth v. Marinez*, 777 A.2d 1121, 1124 (Pa.Super. 2001), *appeal denied*, 788 A.2d 374 (Pa. 2001) (citations omitted).

Appellant relies on a letter from Kenneth J. Weiss, M.D., who was a defense expert at trial. The letter is dated August 5, 2004, while the case was on appeal, and references a plea offer:

> My understanding is that you rejected a plea offer and insisted on having a trial. Your lawyers told you that, by using a defense of voluntary intoxication[2],

---

[2] Evidence of voluntary intoxication or drugged condition may be used to reduce murder from a higher degree to a lower degree. 18 Pa.C.S. § 308. The theory of this rule of law is that a person overwhelmed by the effects of alcohol or drugs cannot form a specific intent to kill. As this Court stated in *Commonwealth v. England*, 474 Pa. 1, 375 A.2d 1292 (1977):

> Where the question of intoxication is introduced into a murder case its only effect could be to negate the specific intent to kill which is required for a finding of murder of the first degree . . . . If intoxication does render an accused incapable of forming the necessary intent the result is to reduce the crime to a lesser degree of murder. In no event does the reduction change the character of the crime from murder to manslaughter.

*Id.* at 19-20, 375 A.2d at 1301. Further, in order for intoxication to reduce murder from a higher to a lower degree, it must be proven that the actor was overwhelmed to the point of losing his faculties and sensibilities. *Commonwealth v. Reiff*, 489 Pa. 12, 15, 413 A.2d 672, 674 (1980).

*Commonwealth v. Breakiron*, 571 A.2d 1035, 1041 (Pa. 1990).

- 5 -

> the best you could do was to have first-degree murder reduced to third-degree. This is the same effect as getting a plea bargain. Why you chose to have a trial is mysterious to us, but it is a fact that your lawyers advised against it. Intoxication defenses are unpopular, and I am sorry to say that you gambled and lost.

PCRA petition, 4/11/08, "Exhibit for first arguement [sic]"; docket #50.

Whatever Dr. Weiss' "understanding" was, Attorney Faust testified unequivocally that there was never any such plea offer. (Notes of testimony, 10/3/12 at 53.) Attorney Faust testified that appellant was never offered a plea agreement and that appellant was adamant that he wanted a jury trial. (*Id.* at 54.) Attorney Faust testified that if they were offered third-degree murder, they would have done everything in their power to get appellant to take it, particularly because juries generally do not like intoxication defenses. (*Id.*) Attorney Faust had no idea why Dr. Weiss was under the misapprehension that a plea down to third-degree murder was offered. (*Id.*) Attorney Faust testified that the prosecuting attorney stated during a pre-trial conference that he would not oppose a bench trial; however, there was no plea offer and the trial judge never indicated he would find appellant guilty of only third-degree murder. (*Id.* at 53-54.)

The PCRA court found as a fact that no plea bargain was ever offered to appellant. (PCRA court opinion, 1/31/13 at 4.) The court's finding is supported by the record, including Attorney Faust's testimony, and will not be disturbed on appeal. As such, the premise for appellant's argument, that

the Commonwealth offered appellant a plea to third-degree murder, lacks merit. Attorney Faust cannot be held ineffective for failing to communicate a plea offer that never existed. This claim fails.

In his second issue on appeal, appellant argues that trial counsel was ineffective for failing to present evidence of Dandy Walker Syndrome.[3] According to appellant, trial counsel could have used this evidence to establish a defense of diminished capacity.

> Diminished capacity is a limited defense, which does not exculpate the defendant from criminal liability entirely, but instead negates the element of specific intent. **Commonwealth v. Gibson**, 597 Pa. 402, 951 A.2d 1110, 1131-32 (2008) (citations omitted). Thus, a defendant asserting a diminished capacity defense admits responsibility for the underlying action, but contests the degree of culpability based upon his inability to formulate the requisite mental state. **Id.** at 1132.

---

[3] According to the National Institutes of Health,

> Dandy-Walker Syndrome is a congenital brain malformation involving the cerebellum (an area at the back of the brain that controls movement) and the fluid-filled spaces around it. The key features of this syndrome are an enlargement of the fourth ventricle (a small channel that allows fluid to flow freely between the upper and lower areas of the brain and spinal cord), a partial or complete absence of the area of the brain between the two cerebellar hemispheres (cerebellar vermis), and cyst formation near the lowest part of the skull. An increase in the size of the fluid spaces surrounding the brain as well as an increase in pressure may also be present.

http://www.ninds.nih.gov/disorders/dandywalker/dandywalker.htm

***Commonwealth v. Williams***, 980 A.2d 510, 527 (Pa. 2009).

According to appellant, he suffers from Dandy Walker Syndrome which causes migraines. (Notes of testimony, 10/3/12 at 12.) This was the reason he was using PCP. (***Id.***) Appellant also testified that Dandy Walker Syndrome can cause an individual to be violent. (***Id.*** at 15.) Appellant theorizes that the cyst on his brain combined with PCP caused him to kill the victim. (***Id.***)

Ms. Faust testified that appellant never told her or co-counsel, Lisa Douple, Esq., that he suffered from Dandy Walker Syndrome. (***Id.*** at 55.) Appellant only stated that he had headaches. (***Id.***) In fact, appellant admitted that he was not diagnosed with Dandy Walker Syndrome until after trial. (***Id.*** at 13, 16.)

Appellant relies on an MRI report from 1999 which states, "Possible Dandy Walker variant." (***Id.*** at 55.) However, the report goes on to conclude that it "is probably of no clinical significance." (***Id.***) Ms. Faust included this report in the medical records which she turned over to Dr. Weiss. (***Id.***) Dr. Weiss, a medical doctor, evaluated appellant and never indicated any type of Dandy Walker Syndrome. (***Id.*** at 57.)

Clearly, this issue lacks arguable merit. Appellant admits that he was not diagnosed with Dandy Walker Syndrome until after trial, and the 1999 MRI report stated that it was likely of no significance. (***Id.*** at 55.) Appellant never told his attorneys that he suffered from Dandy Walker Syndrome.

They simply had no reason to pursue a diminished capacity defense based on Dandy Walker Syndrome. We also note that aside from appellant's own self-serving testimony, there is no evidence that Dandy Walker Syndrome causes an individual to become violent.

In his third issue on appeal, appellant argues that trial counsel was ineffective for failing to call certain character witnesses on his behalf; namely, Brad Sorkin, Richard Sorkin, and Barbara Smith. According to appellant, these witnesses would have testified to his good character and peaceful and hard-working nature. (Appellant's brief at 24.)

> To establish ineffectiveness for failure to call a witness, Appellant must establish that: (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness or counsel should otherwise have known of him; (4) the witness was prepared to cooperate and testify for Appellant at trial; and (5) the absence of the testimony prejudiced Appellant so as to deny him a fair trial. A defendant must establish prejudice by demonstrating that he was denied a fair trial because of the absence of the testimony of the proposed witness.

*Commonwealth v. O'Bidos*, 849 A.2d 243, 249 (Pa.Super. 2004), *appeal denied*, 860 A.2d 123 (Pa. 2004) (citations omitted).

Ms. Faust testified that she investigated all three of these witnesses, and none of them would have given testimony particularly beneficial to appellant's case. In fact, their testimony could have been extremely damaging. Smith told Ms. Faust that she has known appellant for ten years and he has worked for her on and off at her bar. (Notes of testimony,

10/3/12 at 58.) Appellant used to be a responsible employee but recently, just before this incident, appellant came into the bar and was upset and crying. (*Id.*) Apparently, he had broken up with his girlfriend. (*Id.*) Smith stated that appellant's behavior was strange and she felt afraid of appellant. (*Id.*)

Richard Sorkin told Ms. Faust that she should speak with his son, Brad. (*Id.* at 62.) Ms. Faust described Richard as hesitant to discuss appellant's character. (*Id.*) When she talked to Brad, Brad told her that, recently, appellant was constantly getting into fights with the customers. (*Id.* at 61.) Brad suspected appellant of using drugs and told him that he had to be clean to work there. (*Id.*) Appellant never came back. (*Id.* at 61-62.)

Obviously, trial counsel had a good reason for not putting these witnesses on the stand. It is doubtful they would have testified that appellant was a person of good character and peaceable, as appellant suggests. Furthermore, Ms. Faust explained that she had litigated a pre-trial motion to exclude appellant's prior convictions for assault, including one involving a police officer. (*Id.* at 51.) Similar to the instant case, appellant stabbed his girlfriend and a police officer while under the influence of PCP. (*Id.*) The trial court granted appellant's motion to keep these convictions out. (*Id.* at 52.) However, Ms. Faust was concerned that by presenting character testimony regarding appellant's peaceful and law-abiding nature,

she would be opening the door to cross-examination about appellant's prior convictions for acts of violence. (*Id.* at 59-60.)

Ms. Faust's concerns were well founded. Admission of these prior convictions into evidence would have been devastating to appellant's case. Therefore, she had a reasonable strategic basis for deciding not to call character witnesses. Furthermore, the underlying claim lacks merit because each of these witnesses, while stating that appellant used to be a reliable and trustworthy employee, told Ms. Faust that recently appellant was acting strangely and in violent fashion. It is doubtful that their testimony would have helped appellant's case.

Next, appellant argues that trial counsel was ineffective for failing to call him as a witness. According to appellant, trial counsel never gave him the option of testifying. (Appellant's brief at 25.)

The decision to testify in one's own behalf:

> is ultimately to be made by the accused after full consultation with counsel. In order to support a claim that counsel was ineffective for "failing to call the appellant to the stand," [the appellant] must demonstrate either that (1) counsel interfered with his client's freedom to testify, or (2) counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision by the client not to testify in his own behalf.

*Commonwealth v. Preston*, 418 Pa.Super. 125, 613 A.2d 603, 605 (1992), *appeal denied*, 533 Pa. 658, 625 A.2d 1192 (1993) (quoting *Commonwealth v. Bazabe*, 404 Pa.Super. 408,

> 590 A.2d 1298, 1301 (1991), **appeal denied**, 528 Pa. 635, 598 A.2d 992 (1991)). "A claim of strategic error absent a showing of specific incidents of counsel's impropriety will not satisfy this standard." **Preston**, **supra** at 605.

**Commonwealth v. Thomas**, 783 A.2d 328, 334-335 (Pa.Super. 2001).

Ms. Faust testified that appellant never asked to testify at trial. (Notes of testimony, 10/3/12 at 64.) Appellant did testify at the suppression hearing so he was well aware of his rights. (**Id.** at 63.) Appellant could not remember the incident so it is unclear what he would have testified to. (**Id.** at 64.) Furthermore, as stated above, appellant had prior convictions for assaulting his girlfriend and a police officer while under the influence of PCP. Ms. Faust was concerned that if appellant took the stand, these convictions could come in as impeachment evidence. (**Id.**) In fact, appellant testified at the PCRA hearing that after trial counsel advised him that by testifying, he could be opening the door to admission of his prior convictions, he "just left it alone."

Counsel had a reasonable basis for advising appellant not to take the stand. In addition, appellant never requested to testify. There is no evidence that, as appellant suggests, trial counsel interfered with his right to testify on his own behalf. The PCRA court's determination that appellant elected not to testify after consulting with trial counsel is supported by the record. (PCRA court opinion, 1/31/13 at 9.) This claim fails.

In his fifth issue on appeal, appellant claims that trial counsel did not allow him to participate in his defense. Appellant states that he disagreed with voluntary intoxication as a defense, and wanted to present a defense of diminished capacity. (Appellant's brief at 27.)

Appellant's claim is belied by the record. Ms. Faust testified that she keeps a log of serious cases, including appellant's. (Notes of testimony, 10/3/12 at 49.) Either she or Ms. Douple met with appellant 31 times. (*Id.*) Appellant was consulted on all decisions of consequence in the trial, and provided with a copy of all the discovery. (*Id.* at 65.) She met with appellant numerous times to discuss the case and trial strategy. (*Id.*)

As discussed above, there was no evidence that appellant suffered from Dandy Walker Syndrome at time of trial and no basis for a diminished capacity defense. There were numerous eyewitnesses to the murder, and identity was not an issue. Counsel went with the only viable defense they had, which was voluntary intoxication due to appellant's ingestion of PCP. Appellant's claim that he was denied the opportunity to meaningfully participate in the preparation of his defense is wholly without merit.

Finally, appellant argues that trial counsel was ineffective for failing to object to the trial court's jury instructions on voluntary intoxication.

> Our standard of review with respect to jury instructions is well settled. When reviewing a challenge to part of a jury instruction, we must review the jury charge as a whole to determine if it is fair and complete. *See Commonwealth v. Hawkins*, 549 Pa. 352, 390, 701 A.2d 492, 511

> (1997). A trial court has wide discretion in phrasing its jury instructions, and "can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration." *Id.*, at 391, 701 A.2d at 511. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law. *See id.*

*Commonwealth v. Einhorn*, 911 A.2d 960, 975 (Pa.Super. 2006), *appeal denied*, 920 A.2d 831 (Pa. 2007).

During their deliberations, the jury came back with two questions regarding voluntary intoxication; *i.e.*, "must we consider voluntary intoxication in reaching our verdict?" and "what is the legal definition of voluntary intoxication?" The trial judge decided that,

> the only way that it would be proper for me to address the first question posed would be to restate the definitions of first and third degree murder, reminding the jury of the obligations of the Commonwealth to prove the elements thereof beyond a reasonable doubt, and then immediately in conjunction therewith, offer the instruction on voluntary intoxication as a defense to first degree murder, so that the jury may see the interplay of that defense and the obligations of the Commonwealth to prove certain things beyond a reasonable doubt.

Notes of testimony, 10/30/03 at 123-124. Both the Commonwealth and defense counsel agreed with the trial court. (*Id.* at 124.) The trial court then proceeded to review the definition of first-degree murder, the defense of voluntary intoxication, and the elements of third-degree murder. (*Id.* at 125-132.)

- 14 -

Appellant complains that the trial court should have instructed the jury that they <u>must</u> consider voluntary intoxication as a defense. (Appellant's brief at 29.) However, as the trial court observed, "It would be improper for me to advance anything that even sounded like an opinion concerning the facts. And you would appropriately reject any such intrusion upon your role." (Notes of testimony, 10/30/03 at 125.) Certainly the trial court is not going to tell the jury that they "must" consider voluntary intoxication in reaching their verdict, which sounds like a judicial endorsement of appellant's defense. Ms. Faust agreed, testifying at the PCRA hearing that, "I don't think they're required to consider anything or accept anything. The only thing they're required to do is to accept the law from the judge." (Notes of testimony, 10/3/12 at 67-68.) The trial court's decision to simply re-read the relevant instructions was not an unreasonable response to the jury's query, and trial counsel was not ineffective for failing to object thereto.

Furthermore, we observe that in re-instructing the jury, the trial court emphasized that voluntary intoxication "applies specifically to the specific intent to kill element" of first-degree murder, and that "The defendant is permitted to claim as a defense that he was so overpowered by intoxicants or drugs that the defendant had lost control of his faculties, and was incapable of forming the specific intent to kill, which as we have just reviewed is required for first degree murder." (Notes of testimony,

10/30/03 at 128-129.) The trial court also told the jury that the Commonwealth has the burden of disproving the defense of voluntary intoxication, which may reduce murder from first degree to third degree. (*Id.* at 129-130.) The trial court's instructions were thorough, complete, and an accurate statement of the law, and trial counsel was not ineffective for failing to object. This claim is without arguable merit.

For these reasons, we determine that the PCRA court did not err in denying appellant's petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/11/2014