413 A.2d 672

COMMONWEALTH of Pennsylvania

v.

Randy Joe REIFF, Appellant.

Supreme Court of Pennsylvania.

Submitted March 3, 1980.

Decided April 25, 1980.

Bruce A. Barrett, Asst. Public Defender, Meadville, for appellant.

Donald E. Lewis, First Asst. Dist. Atty., Meadville, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

Appellant, Randy Joe Reiff, was convicted by a jury of murder of the first degree, unlawful restraint, and terroristic threats. The convictions arose from the fatal shooting of Douglas Castle in Meadville, Pennsylvania, on August 14, 1978. Following the denial of post-trial motions, appellant was sentenced to a term of life imprisonment on the murder of the first degree charge and to a concurrent term of two and one-half to five years imprisonment on the remaining charges. This direct appeal followed.[1]

Appellant presents two issues for review, both of which concern the trial court's instructions to the jury. Appellant first contends that the lower court erred in refusing his requested instruction on the defense of voluntary intoxication. That request was made pursuant to Section 308 of the Crimes Code, 18 Pa.C.S.A. § 308 (enacted April 7, 1976), which provides:

> Neither voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge, nor may evidence of such [intoxication] be introduced to negative the ele-

---

1. Appellant did not appeal from the judgments of sentence imposed on the charges of unlawful restraint and terroristic threats.

ment of intent of the offense, except that evidence of such intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree of murder.

Appellant alleges that sufficient evidence was introduced at trial to establish that he was "intoxicated" at the time of the shooting and, therefore, incapable of forming the specific intent necessary to commit murder of the first degree.

The testimony at trial established that appellant and a friend, Donald Buchanan, were at Kacy's Saloon in Meadville from approximately 9:30 p. m. until 1:00 a. m. on the night of the shooting. This testimony (Buchanan and Richie Cady, the bartender)[2] showed that appellant drank approximately two and one-half quarts of beer during this period of time. This testimony further revealed that appellant exhibited no signs of intoxication and that there was nothing unusual about appellant's behavior. Furthermore, there was no evidence that appellant ingested any intoxicants after leaving Kacy's Saloon.

The Statutory Construction Act of 1972, Act of December 6, 1972, P.L. 1339, No. 290, § 3, 1 Pa.C.S.A. §§ 1501–1991 (Supp.1979–80) provides, *inter alia,* that when construing the provisions of statutes, non-technical words and phrases are to be construed "according to their common and approved usage." 1 Pa.C.S.A. § 1903(a). The key word in the voluntary intoxication statute is "intoxication." "Intoxication" is a non-technical word which Webster's Dictionary (unabridged 2nd ed. 1976) defines as "a making or becoming drunk." "Drunk" is defined by Webster's Dictionary as *"overwhelmed or overpowered* by alcoholic liquor *to the point of losing control over one's faculties."* (emphasis

---

2. Appellant did not testify at trial. However, a statement given by appellant to police following his arrest was read into the record at trial. In this statement, appellant related that he smoked "some" marijuana more than four hours before the shooting occurred and that he may have drank four or five quarts of beer. Appellant made no reference to being intoxicated on the night of the shooting and his recollection of the evening's events was lucid.

supplied).  Drinking and intoxication are not synonymous terms; therefore a jury instruction on intoxication is not warranted because evidence of drinking is introduced at trial.  It is the intention of the legislature that a defendant be overwhelmed or overpowered by alcoholic liquor to the point of losing his or her faculties or sensibilities before an intoxication instruction be given.

In the instant case, there was no evidence that appellant was intoxicated or had lost his faculties or sensibilities.  In *Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282 (1975), this Court stated that there must be sufficient evidence of intoxication in the record to bring that issue into the case before the trial court is required to instruct the jury on an intoxication defense.  As there was insufficient evidence of intoxication in the record, the trial court did not err in refusing to instruct the jury on an intoxication defense.

■ Appellant's second contention is that the lower court erred in refusing to instruct the jury as to self-defense.

The testimony at trial revealed that, for several weeks prior to the slaying, appellant had been dating one Linda Bly.  After leaving Kacy's Saloon early in the morning of August 14, 1978 (date of the slaying), appellant went to Linda Bly's apartment, and learned from a babysitter that Linda was across the hall in Douglas Castle's (victim's) apartment.  Upon finding the door to the victim's apartment unlocked, appellant entered the apartment and discovered Linda in bed with the victim.  Appellant announced, while brandishing a gun, "I'm going to blow you away." The victim told appellant to leave the apartment, to which appellant responded, "It's not for you to say—I'm the one with the gun."  The victim then attempted to get out of bed but, as he stepped over Linda, he tripped and fell forward, striking appellant's gun hand.  Appellant retreated two steps and fired the gun once, striking the victim in the neck.

In *Commonwealth v. Black*, 474 Pa. 47, 376 A.2d 627 (1977), this Court stated that "to establish the defense of self-defense it must be shown that (a) the slayer was free from fault in provoking or continuing the difficulty which

resulted in the slaying; (b) that the slayer must have reasonably believed that he was in imminent danger of death or great bodily harm, and that there was a necessity to use such force to save himself therefrom; and (c) the slayer did not violate any duty to retreat or to avoid the danger." *Id.*, 474 Pa. at 53, 376 A.2d at 630; Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 505 (effective June 6, 1973) (provision of the Crimes Code providing for the use of force in self-protection).

There was no evidence presented at trial to indicate that appellant reasonably believed that he was in imminent danger of great bodily harm or that he was required to use deadly force to protect himself.[3]  Furthermore, appellant was at fault in provoking the difficulty and made no attempt to retreat or avoid the danger.  Therefore, the trial court did not err in refusing to instruct the jury on self-defense. *Commonwealth v. Tervalon*, 463 Pa. 581, 345 A.2d 671 (1975).

Judgment of sentence affirmed.

ROBERTS, J., filed a concurring opinion in which EAGEN, C. J., and NIX, J., join.

**3.** Appellant now for the first time contends in his brief that, as the victim got out of bed, he approached appellant with a clock radio in his hand.  Appellant thus maintains that he was acting in self-defense when he shot the victim.  This fact to which appellant now draws this Court's attention is de hors the record.  Appellant did not present any evidence at trial to establish said fact upon which his theory of self-defense is predicated.  Furthermore, appellant's statement which was read into evidence contained nothing about the clock radio situation.  To the contrary, the statement contained the following:

Q.  Did you see his [the victim's] hands when he came off the bed?
A.  I couldn't tell what he had in his hands, I didn't know if he had a gun or what, you know, whatever he had.
Q.  *But to the best of your knowledge, you don't know whether he had anything in his hands?*
A.  *No.*

Q.  Do you know how the radio got to where it was?  Was there anything to do with the radio?  Did you move it or have Linda move it or anything?
A.  No, I don't remember anything about a radio.
(Emphasis supplied).

ROBERTS, Justice, concurring.

I agree with the majority that the judgment of sentence should be affirmed. I cannot, however, subscribe to the majority's analysis of appellant's "intoxication" claim. Despite the bold assertion of the majority, there is no evidence that our Legislature intends "that a defendant be overwhelmed or overpowered by alcoholic liquor to the point of losing his or her faculties or sensibilities before an intoxication instruction be given." Rather, there need exist only a reasonable doubt as to a defendant's sobriety at the time of the offense to justify an intoxication instruction. American Law Institute, Model Penal Code, § 1.13 Comment at p. 108 (Tent. Draft No. 4, 1975). See e. g., *Commonwealth v. Kichline*, 468 Pa. 285, 361 A.2d 282 (1975). In my view, there is no evidence here creating such a doubt. See *Kichline*, supra. The trial court thus properly declined to instruct the jury on intoxication.

EAGEN, C. J., and NIX, J., join in this concurring opinion.