J-S47009-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SHELTON RAY AKEE RITTER, | |
| Appellant | No. 1651 MDA 2015 |

Appeal from the Judgment of Sentence August 26, 2015
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0005068-2014

BEFORE: SHOGAN, LAZARUS, and JENKINS, JJ.

MEMORANDUM BY SHOGAN, J.: **FILED JULY 26, 2016**

Appellant, Shelton Ray Akee Ritter, appeals from the judgment of sentence entered on August 26, 2015, in the York County Court of Common Pleas. After careful review, we reverse the judgment of sentence entered on the charge of fleeing or attempting to elude a police officer, and we remand for a new trial.

The trial court provided the following background in this matter:

On May 13, 2015, before the commencement of his first jury trial, the Appellant pleaded guilty to Counts 3 [possession of controlled substance], 4 [possession of drug paraphernalia], 5 [driving while operating privileges were suspended or revoked], and 11 [driving under the influence of alcohol or controlled substance]. On May 14, 2015, this Court formally declared a mistrial due to the jury's inability to reach a unanimous verdict on the remaining counts. The Commonwealth sought to try the Appellant again, and his second trial began on July 14, 2015. The next day, on July 15th, he was found guilty of Counts 1

[fleeing or attempting to elude a police officer] and 6 [traffic control signals].[1]

During the trial, Officer Daniel Kling of the York City Police Department testified that on June 13, 2014, he was on duty when he observed a vehicle stopped at red light at Princess Street in the City of York. N.T. 7/14 – 7/15/2015 at 81-82. Officer Kling recognized the driver and identified him as the Appellant. Id. at 82. Through prior knowledge, Officer Kling knew the Appellant's license status was suspended, so he, and the two other officers who were with him, proceeded to turn around and follow the Appellant. Id. at 82-83. The officers caught up to the Appellant while he was stopped at a red light waiting to turn left onto Broad Street. Id. at 83. While the light was still red Officer Kling observed the Appellant make a left-hand turn and proceed down Broad Street. He continued following the Appellant until he came to a stop. Id. Officer Kling testified at that time the Appellant's vehicle came to a stop and Officer Glatfelter turned on the emergency lights and "hit the welp, which is like a short siren." Id. at 83-84.

Officer Kling testified that as soon as he and the other officers pulled in behind the Appellant, the passenger exited the vehicle. N.T. 7/14 – 7/15/2015 at 85,101. Officer Kling got out the unmarked police car and told the passenger to get back in the vehicle. Id. The Appellant then drove away. Id. The officers jumped back in their vehicle, and began to pursue the Appellant. Id. at 86. Officers were able to catch up to the Appellant when he pulled into a parking area. Id. at 87. Officer Kling described the parking lot as a circle with cars parked on the outside and a row of cars in the center of the circle. Id. Officers Kling, Clymer, and Glatfelter all got out of their vehicle and approached the Appellant instructing him to put his vehicle in park. Id. at 88. According to Officer Kling, the Appellant was looking directly at the officers while they were giving these verbal commands. Id. The Appellant put his

---

[1] To clarify, Appellant pled guilty to counts 3, 4, 5, and 11. Counts 2, 7, 8, 9, and 10 were *nol prossed*. Count 6, concerning failure to stop at a traffic light, was a summary offense, and therefore, Appellant's second trial concerned only the charge for fleeing or attempting to elude a police officer while driving under the influence.

vehicle into reverse and began driving clockwise around the parking lot. Id. Officer Glatfelter moved his vehicle to obstruct the Appellant's path, and Officers Kling and Clymer chased the Appellant on foot. Id. at 89.

Eventually, the Appellant stopped his vehicle and put it in park. N.T. 7/14 – 7/15/2015 at 89. Officer Kling testified that the Appellant would not voluntarily get out of the vehicle, so he forcibly removed him. Id. Officers found a bag of marijuana on the Appellant and a cold, half-full bottle of Budweiser Select in the Appellant's vehicle. Id. at 90. Officer Kling testified that while he was searching the Appellant he smelled a strong odor of alcoholic beverage emanating from his person. Id. The Appellant admitted to having marijuana and drinking before he drove. Id.

Officers took the Appellant to central booking at which point he indicated he wanted medical treatment. N.T. 7/14 - 7/15/2015 at 91. While waiting with the Appellant at the hospital, Officer Kling testified that the Appellant repeatedly stated that he does not run from the police. Id. at 91.

On cross-examination, Officer Kling clarified that because he was in an unmarked vehicle it was not equipped with a typical light bar on top of the vehicle. 7/14 – 7/15/2015 at 97. He also indicated that while officers were following the Appellant they did not activate their lights and sirens. Id. at 99. Furthermore, Officer Kling agreed with defense counsel that this was not a high speed chase through the city. Id. at 102. Finally, Officer Kling estimated that approximately 30 to 45 seconds passed from the time the Appellant pulled away from the curb on Broad Street to the time he was placed in custody in the parking lot. Id. at 106.

Officer Timothy Clymer testified to essentially the same facts as Officer Kling. *See* N.T. 7/14 – 7/15/2015 at 109-118. Officer Clymer added that from his position he could see a white male passenger in the Appellant's vehicle. Id. at 111. When the Appellant pulled over on Broad Street to let his passenger out, Officer Clymer testified that he pulled up behind the Appellant's vehicle and activated the emergency lights to initiate a traffic stop. Id. at 112. As officers began to exit their vehicle, the Appellant drove away. Id. at 113. Officer Clymer added that on the way to the hospital the Appellant made several spontaneous

statements, which included an apology for running. Id. at 116. The Appellant indicated that he did not see the lights, and that he had a couple of beers, but that he was not drunk. Id.

The parties entered into stipulation that if called to testify Ayako Chan-Hosokawa, forensic toxicologist, would state that the Appellant's BAC was .140 %, and his blood also contained the inactive metabolites for marijuana. N.T. 7/14 – 7/15/2015 at 117.

Like Officer Clymer, Officer Clayton Glatfelter's testimony was very similar to that of Officer Kling. See N.T. 7/14 – 7/15/2015 at 123-31. Officer Glatfelter testified that when the Appellant turned left at the red light, it was his opinion that the Appellant was trying to flee. Id. at 125. The parties entered into one final stipulation, that being that the substance found on the Appellant's person did test positive for marijuana. Id. at 130-31.

The Commonwealth rested, and the Appellant took the stand. N.T. 7/14 – 7/15/2015 at 136, 143. The Appellant testified that on June 13, 2014, he was at his house with a couple of friends having a few drinks. Id. at 145. His friend wanted to go home, so the Appellant offered to drop his friend off at his house. Id. With respect to the left-hand turn on to Broad Street, the Appellant stated that he saw the opposite light turning from green to yellow so he began inching forward, and then he went ahead and made the left turn. Id. at 146. He let his friend out of the car and then proceeded to the parking lot to turn around and go back to his house. Id. at 147. The Appellant said he knew his license was suspended, so he did not want to make a U-turn in the middle of the street. Id.

The Appellant testified that he did remember seeing a black SUV, but he did not know it was an unmarked police vehicle. N.T. 7/14 – 7/15/2015 at 151-52. The Appellant maintained he did not hear any sirens, and that the only time he knew the police were pursuing him was when he put his vehicle into reverse to leave the parking lot and he felt an officer pulling him from his vehicle. Id. at 153. The Appellant admitted that his decision to drink and drive was wrong; but that he was not feeling drunk and felt he was able to drive. Id. at 154. In fact, the Appellant, on re-direct, indicated that he was surprised when he learned what his BAC was because he "did not feel what they

were telling me I should be feeling." Id. at 172. Finally, the Appellant was adamant that he did not flee the police on June 13, 2014, and that he was not trying to hide from the police that night. Id. at 155-56.

On cross-examination, the Appellant denied ever driving around in circles in the parking lot. N.T. 7/14 – 7/15/2015 at 165-66. The Appellant indicated that if he was slurring his speech it was not because he was intoxicated, it was because the officers had slammed his head on the ground. Id. at 167. Finally, the Appellant maintained that he did not see officers with their guns drawn approaching his vehicle. Id. at 169.

On re-direct, the Appellant elaborated on why he did not let his friend walk home if he only lived a couple blocks away. N.T. 7/14 – 7/15/2015 at 171. The Appellant was candid in stating that his friend, being a white male, would have been a target in that area of the city. Id. The Appellant stated that his mother was home at the time, but that he did not want to bother her for a ride because of her poor health. Id. at 171-72.

Trial Court Opinion, 1/4/15, at 1-6 (footnote added).

After the Commonwealth rested and while the jury was out of the courtroom, the Commonwealth requested a jury instruction on voluntary intoxication.[2] N.T., 7/14/15-7/15/15, at 138-139. Appellant objected, but the trial court overruled the objection and agreed to give the instruction.[3] *Id*. at 139-140. The trial court instructed the jury as follows:

---

[2] Pennsylvania Standard Criminal Jury Instruction 8.308A.

[3] The attorney for the Commonwealth requested the voluntary intoxication instruction because, after speaking to the jurors following Appellant's mistrial, he averred that some jurors felt Appellant "was too drunk or too high to understand what was going on." Trial Court Opinion, 1/4/15, at 7 (citing N.T., 7/14/15-7/15/15, at 138-139).

[Appellant] has been charged with the offense of fleeing or attempting to elude a police officer. To find [Appellant] guilty of that offense, you would have to find the following elements have been proven beyond a reasonable doubt: First, that [Appellant] was a driver of a motor vehicle; second, that [Appellant] was given a visual and audible signal by a police officer to bring the vehicle to a stop. The signal given by the police officer may have been by hand, voice, emergency lights, or siren.

Third, that [Appellant] failed or refused to bring the vehicle to a stop or fled or attempted to elude the pursuing police officer; fourth, that [Appellant] did so willfully, that is, he was aware of the officer's signal to stop and refused to do so.

Now, as I said, if and only if you find [Appellant] guilty of that offense, do you go on and answer the second question, and that is, while fleeing, did [Appellant] do so while committing the crime of driving under the influence of alcohol and drugs?

And I believe you heard the agreement of the parties that should you find [Appellant] guilty of the first question, then the answer to that question as agreed to by the parties, the answer to the second question is yes.

So I am not going to go into a definition of what driving under the influence is. Of course if you find [Appellant] not guilty of the first question, that is it. You do not go any further. You indicate to the tipstaff that you have reached a verdict.

Also, with regard to the crime with which [Appellant] is charged, you should know that **voluntary intoxication is not a defense to a criminal charge. A person who voluntarily uses intoxicants or drugs cannot become so intoxicated or drugged that he is legally incapable of committing a crime**.

N.T., 7/14/15-7/15/15, at 223-224 (emphasis added).

Ultimately, the jury returned a verdict of guilty on the fleeing or attempting to elude a police officer charge. N.T., 7/14/15-7/15/15, at 228.[4] On August 26, 2015, the trial court sentenced Appellant to a term of six to twelve months of incarceration on the fleeing and eluding conviction.

Appellant filed a timely notice of appeal on September 22, 2015. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Appellant presents one issue for this Court's consideration:

1. Whether the trial court committed fundamental error by instructing the jury on voluntary intoxication when such instruction was irrelevant to Appellant's defense and confused or misled the jury in its determination of guilt?

Appellant's Brief at 4.

Our standard of review in assessing a trial court's jury instruction is as follows:

When evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

***Commonwealth v. Antidormi***, 84 A.3d 736, 754 (Pa. Super. 2014).

_____

[4] While we are reviewing only the jury instruction with respect to the traffic violation, we note that the trial court found Appellant guilty of the summary offense of failing to stop at the red light. N.T., 7/14/15-7/15/15, at 229.

The Crimes Code discusses the ramifications of voluntary intoxication as follows:

**Intoxication or drugged condition**

Neither voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge, nor may evidence of such conditions be introduced to negative the element of intent of the offense, except that evidence of such intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree of murder.

18 Pa.C.S. § 308. In cases of first-degree murder, our Supreme Court has explained:

a jury instruction regarding diminished capacity due to voluntary intoxication is justified only when the record contains evidence that the accused was intoxicated to the point of losing his or her faculties or sensibilities. ***Commonwealth v. Reiff***, 489 Pa. 12, 413 A.2d 672, 674 (1980). Evidence that the accused ingested alcohol or other intoxicating drug—without more—does not warrant a voluntary intoxication instruction. ***Id***. In ***Reiff***, the evidence showed that the appellant had consumed approximately two and one-half quarts of beer during the several hours before he fatally shot a man, but there was no evidence that the appellant exhibited any signs of intoxication or unusual behavior. ***Id***. at 673. Accordingly, we held that the trial court did not err in refusing to give a jury instruction as to diminished capacity due to voluntary intoxication. ***Id***. at 674; ***see also Commonwealth v. Marinelli***, 547 Pa. 294, 690 A.2d 203, 220–21 (1997) (holding that the trial court did not err by refusing to give a voluntary intoxication charge because, even though there was testimony that the appellant had consumed some alcohol prior to the killing, there was no evidence that the appellant had been overwhelmed or overpowered by alcohol).

***Commonwealth v. Padilla***, 80 A.3d 1238, 1263-1264 (Pa. 2013).

Here, Appellant was not charged with murder, and he never introduced evidence that he was so intoxicated that he lost control of his faculties.

Rather, his defense was that the police officers' version of events was inaccurate, and he would never run from the police. N.T., 7/14/15-7/15/15, at 156.

After review, we conclude that voluntary intoxication, as defined in 18 Pa.C.S. § 308, was not available as a defense. Accordingly, we conclude that the voluntary intoxication instruction should not have been given when requested by the Commonwealth. In colloquial terms, because voluntary intoxication could not have been used as a shield, we find that it should not have been utilized as a sword. Appellant never testified or asserted that he was too intoxicated to understand his actions or the events as they unfolded. If the rationale for providing the instruction was that the trial court wanted to make it clear to the jury that voluntary intoxication is not a defense, then the voluntary intoxication instruction should be given in **every** criminal case. Otherwise, it is a superfluous instruction that serves to confuse the jury where intoxication is not part of the defense theory.

For the reasons set forth above, we conclude that the trial court erred and abused its discretion when it instructed the jury on voluntary intoxication. Accordingly, we reverse the judgment of sentence and remand for further proceedings consistent with this Memorandum.

Judgement of sentence reversed. Case remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/26/2016