J-S46006-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WAYNE KOPACK, | |
| Appellant | No. 1660 EDA 2015 |

Appeal from the Judgment of Sentence Entered May 5, 2015
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0002959-2014

BEFORE:  BENDER, P.J.E., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED AUGUST 04, 2016**

Appellant, Wayne Kopack, appeals from the judgment of sentence of an aggregate term of 1½ to 5 years' incarceration, imposed after a jury convicted him of two counts each of terroristic threats and simple assault, and a single count of possessing an instrument of crime. On appeal, Appellant challenges the court's ruling to permit the admission of Appellant's prior *crimen falsi* convictions, as well as the court's instruction to the jury on self-defense. After careful review, we affirm.

The trial court set forth the facts of Appellant's case, as follows:

> On March 28, 2014 at approximately 9:30 p.m., Lisa Freed and her husband, Curtis Freed, were driving in the vicinity of 2nd Street and Noble Street in Souderton, Montgomery County, calling out for their lost dog. All of the windows of their green

---

[*] Retired Senior Judge assigned to the Superior Court.

Suburban SUV were down. Mr. Freed was driving the vehicle and Mrs. Freed was in the back seat. At trial, Mr. Freed testified that as they were driving up 2nd Street, the couple saw Appellant going up Noble Street in his underwear. As they came back around the block, Appellant came slowly out, stepped off the curb in front of the vehicle's headlights and raised a crossbow, pointing it directly at Mr. Freed's face from a distance of about 10 feet. Both Mr. and Mrs. Freed were terrified and scared. They had no knowledge that the crossbow was non-functional. They were able to drive a short distance away and call 911.

Presumably to advance the self-defense theory of the defense, on cross-examination of the Freeds, defense counsel brought out that Mr. Freed was driving the vehicle slowly, about 20 miles per hour[,] in a dimly lit area. In addition, defense counsel brought out the fact that the Freeds passed Appellant twice as they went around the block looking for their dog. Further, defense counsel questioned both Mr. and Mrs. Freed about whether they reported to police that they saw another person following Appellant.

First to respond to the scene was Officer Adam Moore of the Souderton Police Department. After apprehending Appellant, Officer Moore questioned him about the crossbow. Appellant denied knowledge of it. The officer attempted to locate the crossbow, but was unable to find it. During his encounter with Appellant, Officer Moore testified that based on his experience he believed Appellant to be under the influence of alcohol. The crossbow was eventually found by Sergeant Kurt Scherzberg of the Souderton Police Department who assisted at the scene with the investigation. The sergeant found it in the home of James Sell, Appellant's friend. Mr. Sell's home is located at 251 Noble Road, right at the scene of the incident.

Also to testify at trial was Tracy Sell, James Sell's estranged wife. She stated that on the night of March 28, 2014, Appellant came into her home [and] took her husband's crossbow. Appellant then sat outside of her home at 251 Noble Road waiting for a car. A car came up the road and Appellant stood up and aimed the crossbow at the car. Appellant [then] came back into her home and asked Mrs. Sell to hide the crossbow, which she did. The crossbow was eventually turned over to the police.

Defense counsel presented the testimony of Mr. Sell and that of Catherine Sprague, also a friend of Appellant's.

Trial Court Opinion (TCO), 8/3/15, at 1-3 (citations to the record omitted).

Based on these facts and evidence, a jury convicted Appellant of the above-stated offenses, and he was sentenced on May 5, 2013. Appellant filed a timely notice of appeal, and also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement. Herein, Appellant presents two issues for our review:

1. The court erred in ruling that [Appellant's] 17 year-old *crimen falsi* conviction[,] which occurred when he was 22 years old[,] was admissible at trial.

2. The court erred in giving the standard jury instruction … for "apparent" use of ["]deadly force["] in this case where [Appellant] pointed an unstrung arrowless crossbow with a broken pulley at complainants and there was no use of deadly force.

Appellant's Brief at 8.

In regard to Appellant's first issue, we apply the following standard of review:

[T]he decision to admit or exclude evidence is committed to the trial court's sound discretion and its evidentiary rulings will only be reversed upon a showing that it abused that discretion. Such a finding may not be made "merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." **Commonwealth v. Sherwood**, 603 Pa. 92, 112, 982 A.2d 483, 495 (2009). Furthermore, an erroneous ruling by a trial court on an evidentiary issue does not necessitate relief where the error was harmless beyond a reasonable doubt. **See Commonwealth v. Markman**, 591 Pa. 249, 277, 916 A.2d 586, 603 (2007).

**Commonwealth v. Laird**, 988 A.2d 618, 636 (Pa. 2010)

Appellant challenges the court's decision that evidence of his prior *crimen falsi* conviction for robbery would be admissible to attack Appellant's credibility if he took the stand at trial. As the trial court explains, in 1997, Appellant pled guilty to robbery, as well as conspiracy to commit robbery, and theft by unlawful taking.[1] TCO at 4. The Commonwealth filed a motion to admit evidence of these prior convictions, which the trial court granted. Appellant now challenges the court's ruling, stressing that his convictions were more than 10 years old, and arguing that their probative value was outweighed by the prejudice he would suffer from their admission.

The admission of *crimen falsi* evidence is governed by Pennsylvania Rule of Evidence 609, which states:

> **(a) In General.** For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or *nolo contendere*, must be admitted if it involved dishonesty or false statement.
>
> **(b) Limit on Using the Evidence After 10 Years.** This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:
>
> > (1) its probative value substantially outweighs its prejudicial effect; and

---

[1] In challenging the court's ruling to admit his prior *crimen falsi* offenses, Appellant confines his argument to his robbery conviction alone. ***See, e.g.,*** Appellant's Brief at 13 ("As the prior offense was a robbery it did not involve a false statement and thus was not probative of [Appellant's] truthfulness."). Thus, we will likewise limit our discussion to the court's ruling regarding Appellant's prior conviction of robbery.

> (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Pa.R.E. 609(a), (b). Additionally, this Court has explained that, in weighing the probative value versus prejudicial impact of older *crimen falsi* convictions, the trial court should consider,

> 1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; 2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; 3) the age and circumstances of the defendant; 4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and 5) the existence of alternative means of attacking the defendant's credibility.

***Commonwealth v. Palo***, 24 A.3d 1050, 1056 (Pa. Super. 2011) (quoting ***Commonwealth v. Harris***, 884 A.2d 920, 925 (Pa. Super. 2005)).

Here, because Appellant's convictions were more than 10 years old, the trial court assessed the above-stated factors, and concluded that Appellant's "prior convictions were highly probative on the issue of credibility and that the probative value greatly outweighed any prejudicial impact." TCO at 6. The court elaborated that,

> [t]he current offenses are of a much different nature than the prior convictions, which are 17 years old. [Their admission would] … not suggest a propensity to commit the current offenses. This [c]ourt determined that the prosecution's case [was] not the strongest case, as Appellant was asserting a self-defense claim, and there was not any other meaningful alternative means of attacking his credibility.

*Id.* at 6-7. The court further explained that in seeking to exclude the *crimen falsi* convictions,

> [d]efense counsel argued, in part, that there were alternative means to attack Appellant's credibility, namely a statement he gave to Mrs. Sell and a statement to police. Defense counsel characterized the statement as being Appellant's account of the incident, namely that he thought he was being followed by the Freed's slowly moving car. It was dark and he was in a vulnerable state of mind and that is why he believed he had to defend himself.
>
> …
>
> The statement[s] referred to by defense counsel[] would be considered … prior consistent statement[s], not something that could impeach Appellant's credibility. Accordingly, this [c]ourt concluded that it would be appropriate [for] the jury to hear about [Appellant's] prior *crimen falsi* convictions, should Appellant decide to testify.

*Id.* at 6, 7.

In his appellate brief, Appellant contends that applying the factors set forth in *Palo* leads to the conclusion that the prejudicial impact of admitting his prior conviction (specifically, for robbery) outweighed the probative value of that evidence. He explains:

> With regard to factor one[,] that the admission of the prior offense reflects upon the veracity of [Appellant,] [a]s the prior offense was a robbery it did not involve a false statement and thus was not probative of [Appellant's] truthfulness. The second factor is the likelihood that the prior conviction would smear [Appellant] before the jury. Robbery is a very serious crime and is one of violence. Accordingly, it would definitely smear the character of [Appellant] and show a propensity to commit the crime he … [stood] charged with as both robbery and simple assault are crimes of violence. The third factor … is the age and circumstances of the defendant. The robbery conviction is 17 years old and at that time[, Appellant] was 22 years old.

- 6 -

[Appellant] is now a much different person. He is employed, a father[,] and has a stable position in the community. Of great significance is factor four, the strength of the prosecution's case. The prosecutions [*sic*] case is incredibly strong. It's [*sic*] strength comes from the testimony of two witnesses, who relate that [Appellant] pointed a crossbow at them as they slowly drove by looking for their dog. Conversely, [A]ppellant's entire self-defense argument rests on []his testimony, which due to the court's ruling remained absent. When a defendant testifies[,] the Commonwealth is always in a position of strength and can easily point out that [the] defen[dant's] testimony is suspect due to self-interest. Finally factor five, the existence of alternative means of attacking [Appellant's] credibility [was] available to the Commonwealth. As … [A]ppellant gave statements to Tracy Sell, a witness in this case[,] and the police, it can certainly be said that there [were] other means to attack credibility. If [Appellant] had been given the opportunity to testify he would have said that he acted appropriately by employing reasonable force in defending himself.

Appellant's Brief at 13-14.

Appellant's arguments regarding the factors outlined in ***Palo*** are largely unavailing, although we agree with his claim that the first factor weighs in favor of excluding his prior *crimen falsi* conviction of robbery, as it was not a 'false statement' offense. Essentially, the trial court focused more prominently on the other ***Palo*** factors in concluding that the prior conviction should be admitted, and Appellant has not convinced us that the court's decision amounted to an abuse of discretion. For instance, in regard to the second factor, we agree with the trial court that the significant differences between the crime of robbery and the charges Appellant faced in the present case would help preclude the jury from improperly finding that Appellant had a criminal propensity to commit the crimes for which he was charged here. This is especially true considering that Appellant could have requested - and

would have properly received - a cautionary jury instruction explaining that the jurors could only consider the evidence of Appellant's prior robbery in assessing his credibility, and not as evidence of his bad character or criminal propensity. **See Commonwealth v. LaMassa**, 532 A.2d 450, 452 (Pa. Super. 1987) (finding it error for the court to omit - and deny defense counsel's request for - a cautionary instruction regarding the relevancy of *crimen falsi* evidence, and how the jury could use such evidence in determining the witness' credibility); **Commonwealth v. Solano**, 129 A.3d 1156, 1178 (Pa. 2015) ("Where evidence of a defendant's prior bad acts is admitted, the defendant is entitled to a jury instruction that the evidence is admissible only for a limited purpose."). Therefore, the second factor of the **Palo** test weighs in favor of admitting Appellant's prior robbery conviction.

The third factor - the age and circumstances of the defendant - does not weigh as strongly in favor of excluding the robbery conviction as Appellant implies. Although Appellant pled guilty to robbery (and related offenses) in 1997, and claims that, since then, he has become 'a much different person,' he ignores that he was repeatedly re-incarcerated in that case due to violations of his probation and parole, the last of which occurred in February 2004. The instant crimes were committed in March of 2014, just over 10 years from Appellant's final period of incarceration for his prior convictions. Therefore, less time has lapsed between Appellant's completing the punishment imposed in the prior case, and his incurring new charges in the present case, than Appellant acknowledges. Consequently, this factor is

not extremely compelling in either admitting, or excluding, the robbery conviction.

The fourth and fifth factors, however, weigh in favor of admitting the *crimen falsi* conviction. While Appellant argues that the Commonwealth's case was 'incredibly strong' because both Mr. and Mrs. Freed testified that Appellant pointed the crossbow at them, that testimony would have had little (if no) impact on the Commonwealth's burden of disproving Appellant's self-defense claim, had he taken the stand. Moreover, the record supports the trial court's conclusion that "there [were] not any other meaningful[,] alternative means of attacking [Appellant's] credibility[,]" than with his *crimen falsi* convictions. On appeal, Appellant baldly refers to his statements to Mrs. Sell and to the police as "other means to attack [his] credibility[,]" yet he offers no discussion of the *content* of those statements to demonstrate how they could have been used to challenge his veracity. Consequently, he has failed to refute the court's determination that his statements to Mrs. Sell and the police were consistent and could not have been used to challenge his credibility.

In sum, the trial court conducted the requisite balancing test, and determined that the evidence of Appellant's prior convictions was more probative than prejudicial and, thus, it was admissible. Appellant's arguments herein have not demonstrated that the court's decision was "manifestly unreasonable or the result of partiality, prejudice, bias, or ill will as shown by the evidence of record." ***Commonwealth v. Benson***, 10 A.3d

1268, 1274 (Pa. Super. 2010) (defining the term "abuse of discretion") (citations omitted). Consequently, we may not reverse the trial court's evidentiary ruling. *Id.* ("[W]e may reverse a trial court's evidentiary rulings only if the trial court abused its discretion.") (citation omitted).

In Appellant's second claim, he challenges a jury instruction provided by the court. In *Commonwealth v. Ragan*, 743 A.2d 390 (Pa. 1999), our Supreme Court explained:

> A trial court has wide discretion in phrasing jury instructions. When reviewing an allegation of an incorrect jury instruction, the appellate court must view the entire charge to determine whether the trial court clearly and accurately presented the concepts of the legal issue to the jury and should not reverse, as a result of the instruction, unless the trial court committed an abuse of its discretion. We will not examine a phrase or sentence of an instruction in a vacuum. Rather, when we evaluate a challenge to a charge, we must consider how each part fits together to convey a complete legal principle.

*Id.* at 397 (citations omitted).

At trial, Appellant requested a jury instruction on self-defense, and the court granted that request. Appellant now complains, however, that the instruction provided by the court was inadequate for several reasons. First, in the majority of Appellant's argument on appeal, he contends that the court incorrectly used the term 'apparent deadly force,' when that term is not set forth in the Standard Jury Instructions, promulgated by the Pennsylvania Bar Institute, on self-defense/justification. *See* Standard Jury Instructions 9.501A ("Justification: Use of Force/Deadly Force in Self-Defense"). Appellant also avers that the court improperly used the terms

'apparent deadly force' and 'deadly force' interchangeably throughout its instruction, which confused the jury.

The Commonwealth argues, and we agree, that Appellant waived his complaints regarding the court's use of 'apparent deadly force.' Appellant does not cite to where in the record he objected to this court's use of this phrase in general, or to the court's using it interchangeably with the term 'deadly force.' Our examination of the record reveals that the only objection lodged by Appellant was to the court's decision to use '*deadly* force,' rather than '*non-deadly* force' (or simply, 'force') in the self-defense instruction. ***See*** N.T. Trial, 1/30/15, at 28-29. Consequently, Appellant has waived his argument pertaining to the court's use of 'apparent deadly force.' ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").[2]

In regard to Appellant's preserved challenge to the court's use of 'deadly force,' rather than 'non-deadly force,' in the self-defense instruction, Appellant's argument is minimal. Indeed, the only references he makes to this issue are the following few sentences:

> The rules and the instruction are concerned with the defendants [*sic*] view of the actual force used and not the perception of the party [on] whom [the] force is used…. The focus of the inquiry is … justification. It is the defendants [*sic*] belief as to this

---

[2] In any event, even if not waived, Appellant's arguments in this regard would not entitle him to a new trial based on our harmless error discussion, *infra*.

necessity for the use of force which is to be judged by an objective standard. ***Commonwealth v. Fisher***[,] 493 A[.]2d 719 (P[a.] [S]uper. 1985). The objective standard is from the defendant's point of view.

Appellant's Brief at 16.

Appellant's minimal argument precludes us from meaningfully reviewing this challenge to the court's instruction. In any event, even if we accepted Appellant's claim that the court erred by using 'deadly force,' we would agree with the Commonwealth that the error was harmless, as Appellant was not even entitled to the self-defense instruction he requested and received.

> A self-defense instruction must be given upon request "where the jury would have a possible basis for finding [self-defense]." ***Commonwealth v. Brown***, 491 Pa. 507, 512, 421 A.2d 660, 662 (1980).
>
> …
>
> In order to successfully invoke a claim of self-defense, the following three conditions must be satisfied:
>
>> "[I]t must be shown that (a) the [actor] was free from fault in provoking or continuing the difficulty which resulted in the [injury]; (b) that the [actor] must have reasonably believed that he was in imminent danger of death or great bodily harm, and that there was a necessity to use such force to save himself therefrom; and (c) the [actor] did not violate any duty to retreat or to avoid the danger."

***Commonwealth v. Reiff***, 413 A.2d 672, 673 (Pa. 1980) (citations omitted).

Here, the evidence presented in trial did not support a finding that Appellant acted in self-defense when he aimed the crossbow at Mr. and Mrs.

Freed. The only evidence that suggested self-defense was: (1) testimony by Officer Adam Moore that the Freeds told police at the scene that "they saw a man following [Appellant] down the street" when they first encountered Appellant, N.T. Trial, 1/29/15, at 51; and (2) Sergeant Kurt Scherzberg's testimony that at the scene of the incident, Appellant told him that he was "scared" because "he felt he was being followed[,]" and "he obtained the crossbow[,]" came back outside and pointed it at the car he thought was following him. *Id.* at 81-82.

Even if the jury could have found, from this evidence, that Appellant reasonably believed he was in imminent danger, there was no evidence to prove the other two requirements of making out a self-defense claim. Specifically, there was no evidence suggesting Appellant could not have safely retreated from the ostensible threat posed by the Freeds (or by the unidentified man following him). Indeed, Appellant's statement to Sergeant Scherzberg proved that he *did retreat in total safety*, but then chose to return outside to confront the Freeds with the crossbow. This evidence also demonstrated that Appellant at least continued the allegedly threatening and dangerous interaction with the Freeds, if not provoked it in the first place. Accordingly, because the evidence did not support a self-defense claim, any error in the court's instruction on self-defense must be considered as harmless.

Judgment of sentence affirmed.

J-S46006-16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/4/2016

- 14 -