J-S36038-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TONEY ROBERT JONES | : | |
| | : | |
| Appellant | : | No. 1766 WDA 2019 |

Appeal from the Judgment of Sentence Entered November 6, 2019
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0002025-2018

BEFORE:  OLSON, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:          FILED SEPTEMBER 21, 2020

Toney Robert Jones (Jones) appeals the judgment of sentence entered by the Court of Common Pleas of Fayette County (trial court).  Following a jury trial, Jones was found guilty of murder in the first degree[1] and sentenced to life in prison.  In this appeal, Jones asserts four errors by the trial court concerning the denial of jury instructions and related restrictions on the scope of his closing argument.  As we find that none of those grounds have merit, the judgment of sentence is affirmed.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(a).

I.

The facts relevant to this appeal are not in dispute. At about 10:00 a.m. on July 26, 2018, Jones left his apartment. See Trial Transcript, 11/9/2019, at p. 56. He had just finished smoking a synthetic marijuana cigarette, which made him feel "paranoid, nervous, [and] scared" for about ten to fifteen minutes. Id. at 56.

While outside, Jones looked across his driveway to the parking lot, where he noticed that the car belonging to his friend, Tyler Stickle, had a broken window. Jones called Stickle's cousin, Jonathan Core, to relay what had happened and they came to the parking lot shortly thereafter. They reported the incident and the police arrived about five to ten minutes after that call. The police departed after documenting the damage to the vehicle.

Jared Ashburn appeared in the area after the police had left and, according to Jones, he became aggressive, using profanity and "challenging everyone to a fight." Id. In response, Jones went back to his apartment to get his gun. Jones testified that he intended to scare Ashburn off of the property by shooting him in the shoulder. Although Jones testified that at one point he "saw something black in [Ashburn's] hand," id. at 60, he never observed Ashburn holding a weapon:

Q: Did you see any gun on him that day?

A: No, Sir.

Id. at p. 63.

When Jones aimed his gun at Ashburn and pulled the trigger, it misfired. Jones then turned his back on Ashburn to adjust the gun's cylinder, making sure a bullet was in the chamber. Eyewitnesses heard Ashburn telling Jones, "I don't play with guns." Trial Transcript, 11/4/2019, at p. 37.

Ashburn walked toward Jones from a few feet away and this time, when Jones turned around, pointed the weapon and pulled the trigger, it went off, fatally striking Ashburn in the chest. Ashburn was not armed and the object he was holding in his hand was a cellular phone. Id. at pp. 50, 62.

Jones immediately went back inside his apartment to change his clothes and hide the gun. See Trial Transcript, 11/9/2019, at p. 68. Police arrived to investigate the shooting, and during their interview with Jones, he initially denied owning a weapon, shooting Ashburn or being involved with his death.[2]

At approximately 2 p.m. that day, Jones was identified as a suspect and held in police custody. An officer who interviewed him testified that Jones

_____

[2] Jones went outside five minutes after smoking a synthetic marijuana cigarette at approximately 10:00 a.m. See Trial Transcript, 11/9/2019, at p. 77. Once Jones, Stickle and Core called the police, it took at least five minutes for them to arrive, and two to three minutes for them to finish their incident report. Id. at p. 78. The initial altercation between Jones and Ashburn lasted at least five minutes. Id. It took Jones another two minutes to go back to his apartment and come back with his gun. Id. at p. 79. Based on Jones' estimates, at least 20 minutes had elapsed between the time when he finished the synthetic marijuana cigarette and the moment he shot Ashburn. The timestamped video recording of the incident indicates that Ashburn was shot at 11:08 a.m. on the day in question, which would have been over an hour after Jones finished smoking synthetic marijuana.

showed no signs of intoxication or impairment. See Trial Transcript, 11/6/2019, at p. 30. During the interview, Jones repeatedly stated that he did not shoot Ashburn. Id. at p. 52. He believed, incorrectly, that the surrounding surveillance cameras were inoperable. Once he realized that the entire incident was recorded, Jones admitted his role in Ashburn's death.

At trial, Jones requested jury instructions on voluntary manslaughter, voluntary intoxication and the use of deadly force in self-defense. The trial court denied those instructions, ruling that there was no evidence to support them. The jury found Jones guilty of murder, and he was sentenced as outlined above. He now presents four issues in his appellate brief:

1. Whether the trial court committed an abuse of discretion by denying defense counsel's request for a[n unreasonable belief] voluntary manslaughter jury instruction.

2. Whether the trial court committed an abuse of discretion by not allowing defense counsel to argue in regard to voluntary manslaughter during closing arguments.

3. Whether the trial court committed an abuse of discretion by denying defense counsel's request for a voluntary intoxication jury instruction.

4. Whether the trial court committed an abuse of discretion by denying defense counsel's request for a justification use of deadly force in self-defense jury instruction.

Appellant's Brief, at 4 (re-numbered, suggested answers omitted).[3]

_____

[3] All four of Jones' claims are reviewed under an abuse of discretion standard. See Commonwealth v. Sandusky, 77 A.3d 663, 667 (Pa. Super. 2013). The "trial court has wide discretion in fashioning jury instructions," and it is

- 4 -

II.

A.

The first two issues Jones raises may be resolved together because they both relate to the "unreasonable belief" component of voluntary manslaughter, which is of a lesser degree than the offense of murder. The trial court denied Jones' request for this instruction and then restricted defense counsel from presenting the theory in closing arguments.

The "unreasonable belief" defense[4] requires a showing that the defendant believed a killing was justified, though he was unreasonable in that belief:

> A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

18 Pa.C.S. §2503(a).

A jury instruction on voluntary manslaughter must be given only "where the offense has been made an issue in the case and where the evidence would

_____

"not required to give every charge that is requested by the parties." Id.; see also Commonwealth v. Baez, 720 A.2d 711, 729 (Pa. 1998) (reviewing restriction on defense counsel's closing argument under an abuse of discretion standard).

[4] On appeal, Jones does not discuss the trial court's denial of the alternative "heat of passion" theory of voluntary manslaughter. See 18 Pa.C.S. § 2503(b). Accordingly, we focus only on whether Jones was entitled to an unreasonable belief instruction.

reasonably support such a verdict." Commonwealth v. Thomas, 717 A.2d 468, 478 (Pa. 1998); Commonwealth v. Browdie, 671 A.2d 668, 674 (Pa. 1996) ("[W]e hold that a trial court shall only instruct on an offense where the offense has been made an issue in the case and where the trial evidence reasonably would support such a verdict."); see also Commonwealth v. Taylor, 876 A.2d 916, 925 (Pa. 2005) (a trial court should not instruct a jury on legal principles which bear no relationship to the evidence that was presented at trial).

In this case, the trial court did not abuse its discretion in denying a voluntary manslaughter instruction because there was no evidence that could have supported a jury verdict to that effect. No evidence showed that Jones was acting under a belief that shooting Ashburn was justified. Commonwealth v. Carter, 466 A.2d 1328, 1329 (Pa. 1983) ("Because the evidence here could not have reasonably supported a finding of unreasonable belief in the necessity of using deadly force in self-defense, appellant was not entitled to a jury instruction on it.").

Jones only briefly alluded to the fact that Ashburn appeared to have a black object in his hand just before Jones opened fire, but he testified that he never saw Ashburn holding a weapon. Moreover, Jones did not explain how he could have been reasonably provoked into using lethal force against Ashburn. The absence of such provocation is especially clear from the fact that after his gun misfired, Jones turned his back on Ashburn to adjust the

gun's cylinder. Thus, the complete lack of urgency on the part of Jones and the lack of any apparent threat from Ashburn, precluded the possibility that Jones reasonably feared for his life at the time of the shooting.

Instructing the jury on that imperfect defense would have been improper because the evidence did not support the instruction and would only have served to confuse the jury. See id. at 1332 ("Further, invitations to jury confusion or irrationality are unnecessary. Such invitations would be offered here if the jury had been instructed on 'unreasonable belief' voluntary manslaughter when the proof at trial did not rationally support a verdict on it.").

Additionally, since the trial court did not err in denying this instruction, it follows that the trial court also did not err in precluding defense counsel from presenting the imperfect defense to the jury. The evidence would not have supported a verdict of voluntary manslaughter, and the trial court properly limited the scope of the closing argument in light of potential verdicts that the evidence arguably supported.

B.

As with voluntary manslaughter, the imperfect defense of voluntary intoxication operates to reduce the offense of premeditated murder to a lower degree. See Commonwealth v. Reiff, 413 A.2d 672, 674 (Pa. 1980) (quoting 18 Pa.C.S. § 308 of the Crime Code, which codifies the voluntary intoxication defense and explains that it may be offered when relevant "to

reduce murder from a higher degree to a lower degree of murder."); Commonwealth v. Padilla, 80 A.3d 1238, 1263-64 (Pa. 2013) (same).

A jury instruction regarding diminished capacity due to voluntary intoxication is proper only when the record contains evidence that at the moment a crime was committed, the accused was intoxicated to the point of losing his faculties or sensibilities. See Commonwealth v. Marshall, 633 A.2d 1100, 1104–05 (Pa. 1993). Evidence that the accused ingested alcohol or another intoxicating substance, without more, does not warrant a voluntary intoxication instruction. See Commonwealth v. Marinelli, 690 A.2d 203, 220-21 (Pa. 1997) (holding that the trial court did not err by refusing to give a voluntary intoxication charge because, even though there was testimony that appellant had consumed alcohol prior to the killing, no evidence showed appellant was incapable of forming intent to kill).

From our review of the record, it is apparent that the trial court did not err in denying a voluntary intoxication instruction in this case. Although Jones testified that he smoked synthetic marijuana on the morning of the shooting, he also stated that it would only affect him for 15 to 20 minutes. His own testimony established that much more than that period of time had elapsed between the point in time when he finished smoking the cigarette and the moment that he shot Ashburn.

Additionally, other than Jones' testimony that he smoked synthetic marijuana, there is no other evidence in the record at all suggesting that he

was intoxicated to the point that he lost his faculties or sensibilities. A moment after shooting Ashburn, Jones had the presence of mind to hide his gun, change his clothes and come up with a false story to give to the police. Thus, the evidence did not meet the standard necessary to entitle Jones to the instruction, and the trial court did not abuse its discretion in denying it.

C.

Finally, we consider Jones' claim that the trial court erred in refusing to grant his request for a self-defense instruction.

Under the Crimes Code, a claim of self-defense requires evidence of the following three elements: "(a) [that the defendant] reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the [defendant] did not violate any duty to retreat." Commonwealth v. Samuel, 590 A.2d 1245, 1247-48 (Pa. 1991); see also 18 Pa.C.S. § 505 (Crimes Code codification of use of force defense).

A person generally has a "duty to retreat" when not in a dwelling, prohibiting the use of deadly force if he "knows he can avoid the necessity of using such force with complete safety by retreating." Commonwealth v. Serge, 837 A.2d 1255, 1266-67 (Pa. Super. 2003).

"While there is no burden on the defendant to prove a claim of self-defense, it is nevertheless required that before such a defense is properly an issue at trial, there must be some evidence, from whatever source, to justify such a finding." Commonwealth v. Brown, 421 A.2d 660, 662 (Pa. 1980) (quoting Commonwealth v. Black, 376 A.2d 627, 630 (Pa. 1977)).

At trial in this case, there was no evidence supporting any of the three elements of a self-defense claim. Jones could not have reasonably believed that deadly force was necessary to thwart imminent death or serious bodily injury because Jones had a gun and Ashburn did not. Neither Jones nor any other witness testified that Ashburn posed such a threat at the moment he was shot.

There is no evidence showing that Ashburn was the initial aggressor or that Jones played no part in the confrontation, especially since Jones willingly escalated the dispute after having returned from the safety of his apartment.

Jones also had a duty to retreat and, in fact, had successfully retreated before returning from his apartment to Ashburn's location with a gun. This demonstrated as a matter of law that Jones knew his use of lethal force could have been avoided. Thus, a self-defense instruction was not warranted.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esc.
Prothonotary


Date: <u>9/21/2020</u>