**William D. TEACHEM, Appellant Below, Respondent,**

v.

**Nancy M. TERRY, Appellee Below, Petitioner.**

No. 637, 2011.

Supreme Court of Delaware.

Submitted: Sept. 19, 2012.
Decided: Nov. 29, 2012.

David L. Baumberger, Chrissinger & Baumberger, Wilmington, Delaware for appellant.

David C. Gagne, Woloshin Lynch Natalie & Gagne, Wilmington, Delaware for appellee.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

STEELE, Chief Justice:

A father appeals a Family Court judge's termination of his parental rights. We reaffirm that intentional abandonment requires a finding that the parent had a settled purpose to forego all parental duties and relinquish all parental claims. We hold that the record supports the judge's holding that the father abandoned his son and that termination is in the child's best interests. Therefore we **AFFIRM** in part, **REVERSE** in part, and **AFFIRM** the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Respondent–Appellant William Teachem [1] (Father) and Petitioner–Appellee Nancy Terry (Mother) met in 2002, and Mother soon became pregnant with Son. Both parties admitted using drugs during the relationship, though Mother testified that she stopped using drugs after becoming pregnant with Son. Mother testified that early in the pregnancy, Father chased her around the house and held her by her neck during an argument, though Father disputes ever harming her. Mother gave birth to Son on October 19, 2002. In early 2003, Mother ended the relationship and requested that Father move out after she caught him using crack cocaine.

Father had no contact with Son until August 2003, when he began visiting Son at Father's sister's home. He never brought anything for Son during these visits. Father lost contact with Son by early 2004, and Mother obtained an order on January 22, 2004 granting her sole custody and allowing Father to visit Son at her discretion. On January 28, the Family Court entered a default support order against Father. Father never paid child support and claimed that he was unaware of the support order until the termination of parental rights hearing. He claimed he did not remember his appearance at a child support bail hearing in 2004.

Father sought work in Alabama and Tennessee during 2004, but never contacted Son. Although he returned to Delaware in 2005, he still made no effort to see or contact Son. Throughout this period, Father remained in contact with his children from an earlier marriage.[2] Father left for California in 2007, where he was arrested twice for selling cocaine. After serving seven and one-half months in a California prison, California released Father on probation.

While in California, Father successfully completed a drug treatment program as well as classes on parenting and job skills. After completing the drug treatment program, he accepted a position managing a drug rehabilitation center. Since the program, Father has passed several drug tests and testified that he is currently drug-free. Because of Father's California probation, he was unable to leave the state until June 2010, when California granted him an early release. Father returned to

---

1. We *sua sponte* assigned pseudonyms to the parties in this matter. *See* Supr. Ct. R. 7(d).

2. Father's ex-wife is married to Mother's uncle. Son frequently interacts with his stepsiblings through Mother's family, although

Mother asked them not to explain that they were related to him. Son also visited Father's sister for a period after Father's absence began, but the visits ceased because Mother was unwilling to explain the relationship to Son.

Delaware in August 2010 and secured employment. At the time of the hearing, Father remained on probation for attempted robbery and check forgery.

Between the January 22, 2004 custody order and Father's return to Delaware in 2010, the record shows Father rarely attempted to contact Son. Father testified he wrote Mother (not Son) in 2007 to inform her of his arrest.[3] Mother stated that Father called her in May 2007 to tell her he was coming to get Son, and followed the call with a text message in which he stated that he feared neither jail nor death. In response to the text, Mother obtained a default protection from abuse order in May 2008. Father did not recall these events and never knew about the court order. In 2008, Father wrote a letter to Son to fulfill a requirement of his drug treatment program. Mother testified that she did not receive this letter, though she admitted receiving a letter to her from Father in July 2010 informing her that he was returning to Delaware and wanted to see Son. Mother called Father in response to the letter and informed him that she intended to marry her boyfriend (Stepfather) and that Father would need to establish visitation rights through the courts.

In contrast to his lack of contact with Son, Father remained in frequent contact with his other children and provided financial support. Father also received settlement proceeds stemming from an altercation with two deputy sheriffs during his California incarceration. Although he distributed money to his other children and purchased a car, he gave Son nothing. Father alleges Mother told him that she did not want support, a claim Mother disputes.

Father filed a petition to modify visitation on November 5, 2010. Five days later, Mother married Stepfather. On November 29, 2010, Mother filed a petition to terminate Father's parental rights and Stepfather filed a petition to adopt Son. In December, Mother discovered that Father had filed a petition to modify visitation.

Both parents testified and presented witnesses at the termination of parental rights hearing. Mother testified that Son does not know Father and fears meeting him. A social worker who interviewed Mother, Son, Stepfather, and Father testified in support of the termination of parental rights. She testified Son and Stepfather have a close relationship and that Son wanted Stepfather to be his father. Although Stepfather has a criminal record, it does not prevent him from being a suitable adoptive parent. The social worker testified that she interviewed Father, but that Father did not explain his lack of contact or failure to pay child support.

Father denied any intent to abandon Son and testified that he wanted to establish contact with Son and pay child support. He disputed the social worker's testimony that she spoke with him for forty-five minutes, claiming that the interview only lasted five minutes. After the hearing, the Family Court judge granted the petition, holding that Father had intentionally abandoned, abandoned without specific intent, and failed to plan for Son. Father filed a timely appeal.

## II. STANDARD OF REVIEW

When considering an appeal from a Family Court judge's decision to terminate parental rights, we review the facts and the law, as well as the judge's inferences and deductions.[4] We review

---

**3.** Although Father claimed he kept copies of every letter he wrote, he did not produce them at the hearing.

**4.** *Brown v. Div. of Family Servs.*, 14 A.3d 507, 509 (Del.2011).

the judge's factual findings to ensure they are supported by the record and are not clearly erroneous.[5] To the extent the judge's decision rests upon legal conclusions, we review them *de novo*.[6] If we determine that the Family Court judge correctly applied the law, our review is limited to ascertaining whether the judge abused her discretion.[7]

## III. DISCUSSION

 Parental rights arise from natural relationships and are fundamental liberties traditionally recognized by our law.[8] Therefore a judge cannot terminate parental rights without compelling reasons to do so.[9] In Delaware, a judge must conduct a two-step analysis to determine whether to terminate parental rights.[10] First, a judge must find that an enumerated statutory basis for terminating parental rights has been established under 13 *Del. C.* § 1103.[11] Next, a judge must determine that terminating parental rights is in the child's best interests.[12] Each step must be established through clear and convincing evidence.[13]

## A. Did Father intentionally abandon Son?

The trial judge first held that Father intentionally abandoned Son. To terminate parental rights over a child older than six months,[14] the trial judge must determine that Father intended to abandon Son and, over a six-month period in the year preceding the petition, failed to "[c]ommunicate or visit regularly with the minor."[15] Mother filed a petition to terminate Father's parental rights on November 29, 2010. Therefore, the trial judge must examine the preceding year and examine whether there was a six-month period where Father did not communicate or visit regularly with Son.[16]

 Father's counsel conceded at oral argument that the record reflected that he did not regularly communicate or visit with Son for at least six months in the year preceding Mother's filing of the petition.[17] We agree. Father wrote to Mother in 2010 and indicated a desire to see Son. Even if we construe the letter as an attempt to contact Son, a single letter does not evidence *regular* communication. The

**5.** *Id.*

**6.** *Id.*

**7.** *Powell v. Dep't of Servs. for Children, Youth & their Families*, 963 A.2d 724, 731 (Del. 2008).

**8.** *In re Stevens*, 652 A.2d 18, 24 (Del.1995); *In re Burns*, 519 A.2d 638, 645 (Del.1986).

**9.** *Stevens*, 652 A.2d at 24.

**10.** *Powell*, 963 A.2d at 731.

**11.** *Id.; Shepherd v. Clemens*, 752 A.2d 533, 537 (Del.2000). The relevant bases in this opinion are intentional abandonment, abandonment without intent, and failure to plan. 13 *Del. C.* § 1103(a)(2), (5).

**12.** 13 *Del. C.* § 1103(a); *Shepherd*, 752 A.2d at 537.

**13.** *Barr v. Div. of Family Servs.*, 974 A.2d 88, 94 (Del.2009).

**14.** The parties do not dispute that Son was eight years old when the petition was filed.

**15.** 13 *Del. C.* § 1103(a)(2)(a)(2). The statute also requires the petitioner to establish that the respondent failed to "[m]anifest an ability and willingness to assume legal and physical custody of the minor, if, during this time, the minor was not in the physical custody of the other parent." *Id.* This requirement is inapplicable here, however, because Son has always been in Mother's physical custody.

**16.** *Id.*

**17.** Transcript of Oral Argument at 11:15, *Teachem v. Terry*, 56 A.3d 1041, 2012 WL 5986631 (Del.2012).

record supports the trial judge's conclusion that the statutory requirements were met.

■ Our inquiry does not end merely because Mother established the statutory requirements for intentional abandonment, however. In *Cline v. Hartzler,* we held that, in addition to the statutory requirements for intentional abandonment, a judge must find that the respondent had a "settled purpose" to abandon a child.[18] This means a "settled purpose to forego all parental duties and relinquish all parental claims to the child." [19]

We next address whether the settled purpose must continue until the petition's filing. In *Black v. Gray,* we held that there was no statutory indication that "legal abandonment operates in perpetuity despite later efforts . . . to establish a familial relationship." [20] We therefore required the petitioners to establish a "present continuing intent to abandon up to the time the termination proceedings are filed." [21] The General Assembly's 1998 revision of the statute added a proviso that "[t]he respondent's act of abandonment cannot be cured by subsequent conduct." [22] In 2000, the General Assembly further amended the statute by expanding the statutory abandonment period from the six months immediately preceding the petition to a six-month period within the year preceding the petition.[23]

■ We presume that the General Assembly knows how we have interpreted existing statutory language when it amends a statute.[24] The statute's plain meaning indicates that the General Assembly added the language we found absent in *Black*—once abandonment has been established, the respondent cannot cure it.[25]

■ Therefore, Family Court judges still must examine whether a respondent evidenced a "settled purpose to forego all parental duties and relinquish all parental claims to the child." [26] To determine whether a respondent had a settled purpose, trial judges should review evidence of subjective intent as well as conduct.[27] The intentional abandonment statute is clear, however, that a present continuing intent to abandon up to the time of the petition's filing is no longer required. Although a respondent's later conduct cannot cure abandonment, trial judges should still consider all relevant conduct to determine whether a settled purpose existed.[28]

Our decision in *Barr v. Division of Family Services* does not compel a contrary conclusion.[29] Although *Barr* cited the settled purpose test as articulated in *Black,* the record in that case established that the respondent met the higher *Black* standard, so we had no occasion to examine the effect of the statutory amend-

18. *Cline v. Hartzler,* 227 A.2d 210, 212 (Del. 1967).

19. *Id.*

20. 540 A.2d 431, 434 (Del.1988).

21. *Id.* at 433.

22. 71 Del. Laws ch. 317, § 1 (1998).

23. 72 Del. Laws ch. 431, § 2 (2000).

24. *See State v. Cooper,* 575 A.2d 1074, 1077 (Del.1990) (holding that the General Assembly is presumed to be aware of prior judicial

decisions); *Scribner v. Chonofsky,* 310 A.2d 924, 926 (Del.Ch.1973).

25. 13 *Del. C.* § 1103(a)(2)(c).

26. *Cline v. Hartzler,* 227 A.2d 210, 212 (Del. 1967).

27. *In re Stevens,* 652 A.2d 18, 27 (Del.1995).

28. *R. v. T. (In re J.),* 799 A.2d 349, 360 (Del. Fam.2002).

29. *See* 974 A.2d 88, 94 (Del.2009) (holding that "the court must find a 'settled purpose' by the parent to abandon the child").

ments.[30] More recently, in *Meyers v. Redner*, we held that the petitioners "were not required to prove [respondent's] present intent to abandon the [c]hild."[31]

 The trial judge found that Father intended to abandon Son. Although she did not use the words "settled purpose," her analysis clearly reflects that she considered it. She based her holding on Father leaving Delaware despite knowing about Son's existence and his failure to contact Son from January 2004 until 2008.[32] The judge discounted Father's 2008 letter, finding that he only wrote it to gain release from his drug treatment program.[33] Even after Father conquered his drug addiction, he still failed to contact Son. She also heavily weighed Father's failure to pay any child support despite his ability to do so.[34]

 A review of the record supplies ample support for the trial judge's conclusion. Father never paid child support for Son, despite distributing proceeds from his lawsuit settlement to each of his other children—and purchasing a car. Father testified that he was unaware of his legal obligations and therefore they cannot be used to support a finding of abandonment. The trial judge was well within her discretion to discount this testimony, however, because she recalled Father had appeared before her in a child support bail hearing.[35] While the clear and convincing evidence standard requires more than a preponderance of the evidence, it does not require judges to accept all witness testimony and forego assessing a witness's credibility.[36]

Father also argues Mother prevented him from contacting Son. While unfortunately one parent often plays a role in preventing contact by the other, Mother testified that during Father's absence, she only told him not to contact Son while he was on drugs. Although Mother's hostility may have played a role in Father's absence, we cannot ignore the absence of any attempt to contact Son for many years, including after he conquered his drug addiction.[37] During this period, Father kept in contact with his other children. Even after Father returned to Delaware, and Mother required him to seek visitation through the courts, he did not file a petition for several months. Under these facts, any interference by Mother is insufficient to mandate a contrary conclusion.

Father's testimony that he never intended to abandon Son does not outweigh his conduct evidencing otherwise. We have recognized that parents frequently testify that they did not intend to abandon their children, but this testimony is not dispositive.[38] As in other areas of the law, actions speak louder than words.

Finally, although Father recently returned to Delaware and contacted Mother regarding a relationship with Son, we cannot ignore the statute's proviso that abandonment cannot be cured by later conduct.[39] Father's filing of a petition to

---

**30.** *Id.* at 94, 97.

**31.** 36 A.3d 350, 2012 WL 218954, at *2 (Del. Jan. 24, 2012) (TABLE).

**32.** *Teachem v. Terry*, No. 10–39354, at 9 (Del. Fam. Oct. 28, 2011).

**33.** *Id.*

**34.** *Id.*

**35.** *Id.* at 5.

**36.** *In re Stevens*, 652 A.2d 18, 29 n. 8 (Del. 1995).

**37.** Mother's request that Son's stepsiblings and other family members not explain their relationship to Son similarly does not affect Father's failure to contact or attempt to contact Son and cannot be construed as an attempt to prevent Father from contacting Son.

**38.** *Stevens*, 652 A.2d at 27.

**39.** 13 *Del. C.* § 1103(a)(2)(c).

modify visitation does not alone belie a settled purpose to abandon. Filing a petition, while weighty, must be evaluated together with Father's other conduct. His total lack of interest in Son's life and his failure to provide any support despite being able to do so are not outweighed by the eleventh-hour filing of a petition.[40] His lack of contact and support to Son stands in stark contrast to the contact and support Father provided his other children during the entire period.

Viewing the record as a whole, Father's conduct evidenced his settled purpose to forego his parental duties and relinquish his parental claims to Son. Although it appears Father has recently acquired an interest in Son, clear and convincing evidence indicates that Father held a settled purpose to abandon Son for many years. Therefore, we affirm the trial judge's finding of intentional abandonment.

### B. Did Father abandon Son with no specific intent?

Another basis for terminating parental rights is abandonment without intent. The trial judge also held that Father abandoned Son without intent.[41] Although Mother must only establish one ground for termination of parental rights, certain aspects of the trial judge's reasoning compel us to address the remainder of her analysis.[42] In order to terminate parental

rights based on abandonment without intent, the judge must first find that the respondent, for a twelve-month period during the eighteen months preceding the petition's filing, failed to: (1) "[c]ommunicate or visit regularly with the minor;" (2) "[f]ile or pursue a pending petition to ... establish a right to have contact or visitation with the minor;" and (3) "[m]anifest an ability and willingness to assume legal and physical custody of the minor, if[,] during this time, the minor was not in the physical custody of the parent."[43] In this case, the relevant period is the eighteen months preceding Mother's filing of the petition on November 29, 2010. The record supports the trial judge's finding that these elements were met. The petitioner must also establish one of the four additional grounds listed in the statute, however.[44] In this case, the judge incorrectly applied the second portion of the statute.

 If a child is in the other parent's and a stepparent's custody, and the stepparent is a prospective adoptive parent, the judge must find that the respondent is not able or willing to promptly establish and maintain contact with the child and to pay for the child's support.[45] Here, the judge determined that Father was "not able or willing promptly to establish and maintain contact with [Son], and to pay for [Son's] support."[46] She based this determination on her finding that "Father *was*

---

**40.** *See R. v. T. (In re J.),* 799 A.2d 349, 362 (Del.Fam.2002) (noting that the mere filing of a petition did not eliminate years of neglect). Even before the amendments to the intentional abandonment statute, filing a petition to modify custody did not immunize a parent. *See Stevens,* 652 A.2d at 27 n. 7. We held that a parent's initiation of legal proceedings was *prima facie* evidence of substantial contact, but this presumption could be rebutted if the proceedings were not initiated or pursued in good faith. *Id.*

**41.** *Teachem v. Terry,* No. 10–39354, at 10 (Del.Fam. Oct. 28, 2011).

**42.** *See Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.,* 817 A.2d 160, 167 (Del. 2002) (addressing dictum to ensure it was not misinterpreted as a correct rule of law).

**43.** 13 *Del. C.* § 1103(a)(2)(b).

**44.** *Id.*

**45.** *Id.*

**46.** *Teachem,* No. 10–39354, at 11.

not willing to establish and maintain contact with [Son]" for nearly eighteen months before he filed a petition to modify visitation.[47] She also found that he "*has* paid no child support."[48] Neither finding provides the necessary support for the trial judge's conclusion. The statute requires the court to evaluate, whether, at the time of the proceeding, the respondent *is* able or willing promptly to establish and maintain contact with the child.[49] Father testified at the proceeding that he was willing to establish and maintain contact and to pay child support. Father's past conduct does not determine his future conduct, and it cannot be the sole basis for holding that Father is unwilling or unable to correct his failures. This misapplication of the statute does not require a remand, however, because the trial judge properly held that Father intentionally abandoned Son.

### C. Did Father fail to plan for Son?

Similarly, we address the trial judge's holding that Father's parental rights should be terminated based on his failure to plan for Son, another enumerated basis under the statute.[50] To terminate parental rights based on a failure to plan, Mother must establish that Father is not able, or has failed, "to plan adequately for the child's physical needs or mental and emotional health and development."[51] When a child resides with a blood relative, the judge must find that the child (1) "has resided in the home of the ... blood relative for a period of at least 1 year ..." and

(2) that the "respondent is incapable of discharging parental responsibilities, and there appears to be little likelihood that the respondent will be able to discharge such parental responsibilities in the near future."[52] The petitioner must establish these elements by clear and convincing evidence.[53]

 The record adequately supports the trial judge's holding that Father failed to plan adequately for Son's needs, health, and development. She erred, however, in her analysis of the other element. She held that Father had shown no capability of discharging his parental responsibilities because of his actions during the first eight years of Son's life.[54] Therefore, she concluded, Father is incapable of discharging his parental responsibilities and "there is little likelihood he will do so in the near future."[55] Similar to abandonment without intent, this analysis requires the trial judge to consider the future, not the past. Father's past actions are informative but not dispositive of whether there is little likelihood he will discharge parental responsibilities in the near future. The record in this case indicates that Father has secured employment, stopped using cocaine, and returned to Delaware. The trial judge's analysis indicates that she considered Father's past actions to mandate the conclusion that there was "little likelihood" Father would be able to discharge his responsibilities in the near future.[56] This error will not require a remand, however, because the trial judge made ade-

---

47. *Id.* (emphasis added).

48. *Id.* (emphasis added).

49. 13 *Del. C.* § 1103(a)(2)(b).

50. *Teachem*, No. 10–39354, at 11.

51. 13 *Del. C.* § 1103(a)(5).

52. *Id.*

53. *Div. of Family Servs. v. Hutton*, 765 A.2d 1267, 1271 (Del.2001).

54. *Teachem*, No. 10–39354, at 12.

55. *Id.*

56. *See id.* (holding that the court could *only* conclude that there was little likelihood Father could meet his responsibilities in the future).

quate findings that termination of Father's parental rights was proper under the "intentional abandonment" provision.[57]

## D. Was the termination of parental rights in Son's best interests?

 If the trial judge determines that the petitioner has established a statutory basis to terminate parental rights, she must analyze whether the termination is in the child's best interests.[58] The judge must consider all relevant factors, including the statutory factors listed in 13 *Del. C.* § 722.[59] When balancing the factors, the judge may assign differing weights to each factor.[60] The best interests of the child test requires a careful examination of the circumstances surrounding each termination of parental rights petition.[61]

 The first factor is the parents' wishes regarding the child's arrangements.[62] The trial judge found that this factor was neutral because Mother and Father disagree regarding whether Fa-

ther's parental rights should be terminated. While Father notes that our law favors joint visitation in the absence of harm to the child,[63] this default preference is irrelevant when the termination of parental rights, rather than two parents' respective custodial or visitation arrangements, is at issue.

 Next, the judge must examine the child's wishes.[64] The judge found that this factor weighs strongly in favor of terminating parental rights because a social worker testified that it is clear Son wants Stepfather to be his father and Mother testified that Son fears having contact with Father.[65] Father questioned Son's competency to express an opinion because of his age, but did not present evidence that Son was incompetent at trial. Judges may properly consider a child's age when weighing this factor,[66] but there is no reason to disregard Son's statements merely because he is eight years old. The trial judge was also within her discretion to believe the social worker's testimony that Son wanted Stepfather to be his father.[67]

57. Father also contended that the judge needed to consider the settled purpose test as part of her analysis of these statutory grounds. Unlike intentional abandonment, the other statutory provisions for terminating parental rights do not require a "settled purpose." *See* 13 *Del. C.* § 1103(a)(2)(b) (establishing requirements for termination where "no finding of intent to abandon has been made").

58. 13 *Del. C.* § 1103(a); *Harper v. Div. of Family Servs.*, 953 A.2d 719, 725 (Del.2008).

59. *See Harper*, 953 A.2d at 725.

60. *Barr v. Div. of Family Servs.*, 974 A.2d 88, 98 (Del.2009).

61. *Shepherd v. Clemens*, 752 A.2d 533, 538 (Del.2000).

62. 13 *Del. C.* § 722(a)(1).

63. *See* 13 *Del. C.* § 728 (mandating that the Family Court establish a visitation schedule designed to encourage "frequent and meaningful contact with both parents").

64. 13 *Del. C.* § 722(a)(2).

65. *Teachem v. Terry*, No. 10–39354, at 13 (Del.Fam. Oct. 28, 2011).

66. *See Jarmon v. Dep't of Servs. for Children, Youth & Their Families*, 911 A.2d 803, 2006 WL 3113122, at *3 (Del. Nov. 2, 2006) (TABLE) (upholding a termination of parental rights where the judge determined a four-year-old child was too young to express an opinion).

67. Father contended that the social worker failed to ask sufficiently probing questions of Son, Mother, and Stepfather and that she was unaware that Mother had initially told Son's stepsiblings not to explain that they and Son were related. Although any investigation could be more thorough, we are not persuaded that the social worker's report was so deficient that the trial judge could not rely upon it.

We are not persuaded that the trial judge's conclusion was unwarranted.

Factor three requires the judge to evaluate the child's interaction and interrelationships with his parents, siblings, and other persons who might affect his best interests.[68] The trial judge found this factor favored termination because Son's close relationship with Stepfather outweighed Father's negligible contact with Son.[69] The judge also noted that Son may continue to have contact with his stepsiblings because they live with Father's ex-wife, who is married to Mother's uncle. Although Father speculates that Son's best interests are to interact with his stepsiblings together with Father, he did not present any evidence to the trial judge. The record, therefore, supports the trial judge's findings.

Father does not dispute factors four, five, or six, which trial judge found were either neutral or favored Mother.[70] Factor seven-evidence of domestic violence—favors Mother.[71] She testified that Father acted violently toward her during her pregnancy. Although Father disputed her testimony, the trial judge was entitled to find Mother's testimony credible.[72] Finally, the trial judge's finding that factor eight—the criminal records of all parties and household residents[73]—favors termination has support in the record. Mother has no criminal record. The trial judge noted that both Stepfather and Father have criminal records, but that the social worker testified that Stepfather's record would not prevent him from being a suitable parent.[74] Father has a criminal record in several states for forgery, attempted robbery, and selling cocaine. The trial judge was within her discretion in determining that this factor favored termination of Father's parental rights.

Although the trial judge might have elaborated more on her conclusions, her determination that terminating Father's parental rights is in Son's best interests is supported by the record. We discern no abuse of discretion in the trial judge's factual findings and no error in her application of the bests interests of the child test. Therefore, the trial judge's decision to terminate Father's parental rights was not an abuse of discretion.

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** in part, **REVERSE** in part, and **AFFIRM** the judgment of the Family Court.

---

68. 13 *Del. C.* § 722(a)(3).

69. *Teachem,* No. 10–39354, at 13–14.

70. Factors four, five, and six are: "(4) [t]he child's adjustment to his ... home, school and community; (5) [t]he mental and physical health of all individuals involved; [and] (6) [p]ast and present compliance by both parents with their rights and responsibilities to their child under [13 *Del. C.* § 701]." 13 *Del. C.* § 722.

71. 13 *Del. C.* § 722(a)(7).

72. Father contends that the trial judge placed too much weight on Father's 2007 text message, which Mother believed was threatening. The Family Court judge did not rely on the text message when evaluating this factor. *Teachem,* No. 10–39354, at 14.

73. 13 *Del. C.* § 722(a)(8).

74. *Teachem,* No. 10–39354, at 14.