J-S22008-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RUBEN DELVALLES-VINCENTE | : | |
| | : | |
| Appellant | : | No. 1243 MDA 2019 |

Appeal from the PCRA Order Entered June 26, 2019
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0001780-2014

BEFORE:   OLSON, J., MURRAY, J., and COLINS, J.*

MEMORANDUM BY OLSON, J.:            **FILED: JUNE 8, 2020**

Appellant, Ruben Delvalles-Vincente, appeals from an order entered June 26, 2019, which dismissed his petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The facts and procedural history of this case are as follows.  On December 29, 2013, Appellant, along with his cousin, Victor Martinez-Raices ("Victor"), attended a party at the home of Alex Resto-Monalvo ("Alex"). During the party, Appellant and others began making fun of Carlos Ramos-Diaz (hereinafter, "Victim") "for being a kept man." ***Commonwealth v. Delvalles-Vincente***, 2016 WL 5210899, *2 (Pa. Super. 2016).  This led to a fight between Victim and Appellant in the kitchen, during which Appellant

_____

* Retired Senior Judge assigned to the Superior Court.

"pulled a gun on [Victim, but Victim] . . . pushed the gun away and began punching Appellant." *Id.* Victim emerged as the winner of the fight, and Appellant and Victor were ejected from the house. *Id.*

Appellant, however, did not leave. Instead, he "sought a rematch" and "threaten[ed] the house with gunfire if [Victim] did not come outside to fight again." *Id.* Eventually, Victim and the others in the house came outside and the two "agreed to fight again, by street rules – meaning fistfight only." *Id.* Victim ultimately prevailed in the second fight. When the fight ended, however, Victim walked away and Appellant "retrieved his gun from [Victor] and ran up behind [Victim,] shooting at him at least four times. [Victim] was struck three times, twice in the leg and once in the back. The gunshot wound to [Victim's] back proved fatal." *Id.*

Thereafter, the Commonwealth charged Appellant with first-degree murder, criminal conspiracy to commit first-degree murder, and aggravated assault. Appellant's trial commenced on January 20, 2015. Multiple individuals testified about the events of the evening, including Appellant himself. Specifically, Appellant testified that, on the night of the murder, "he was intoxicated and had [used] cocaine." *Id.* at *4. In addition, Appellant claimed that Victim "introduced the gun into the fight and that [Appellant] fired at [Victim] believing [Victim] was attempting to kill him." *Id.* at *3.

On January 26, 2015, the jury found Appellant guilty of first and third-degree murder. The trial court sentenced Appellant to life-imprisonment that same day. This Court affirmed Appellant's judgment of sentence on July

- 2 -

29, 2016 and our Supreme Court subsequently denied *allocatur* on January 23, 2017. ***Commonwealth v. Delvalles-Vincente***, 2016 WL 5210899 (Pa. Super. 2016), *appeal denied*, 164 A.3d 471 (Pa. 2016).

On January 24, 2017, Appellant filed a *pro se* PCRA petition. The PCRA court appointed counsel, who, on April 6, 2018, filed an amended PCRA petition on Appellant's behalf. In his petition, Appellant raised various claims asserting trial counsel's ineffectiveness. In addition, Appellant claimed that recently, he learned that a Commonwealth witness, Loami Pacheco-Morales ("Loami"), "lied to police and at trial about how the events occurred leading to the death of [Victim]." Appellant's Amended PCRA Petition, 4/8/16, at 6. Per Appellant, this revelation constituted after-discovered evidence under 42 Pa.C.S.A. § 9542(a)(2)(vi) and entitled him to a new trial. ***Id***.

On December 31, 2018, the PCRA court issued notice that it intended to dismiss Appellant's PCRA petition in 20 days without holding a hearing because it concluded that Appellant's claims lacked merit. ***See*** Pa.R.Crim.P. 907(1). Appellant filed a response to the PCRA court's Rule 907 notice on January 22, 2018, and moved to amend his PCRA petition. Thereafter, on June 26, 2019, the PCRA court issued an order granting Appellant's motion to amend, but dismissing his PCRA petition as amended. This timely appeal followed.[1]

---

[1] Appellant filed a notice of appeal on July 25, 2019. On August 23, 2019, the PCRA court entered an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b)(1). Appellant timely complied. The PCRA court issued an opinion pursuant to Pa.R.A.P. 1925(a) on October 30, 2019.

Appellant raises the following issue on appeal:

Whether the PCRA court committed reversible error and/or []
abuse[d its] discretion [in dismissing Appellant's PCRA petition]
without a hearing[?]

Appellant's Brief at 3.

Appellant raised the following claims in his amended PCRA petition:

I. Trial counsel was ineffective for inadequately developing the
defense of diminished capacity.

II. Trial counsel was ineffective for pursuing inconsistent and
irreconcilable defenses.

III. Trial counsel was ineffective for failing to interview and call Cindy
Martinez ("Cindy") and Manuel Torres-Raices ("Manuel") as
witnesses in Appellant's trial.

IV. Trial counsel was ineffective for failing to object to the admission
of inadmissible hearsay.

V. Trial counsel was ineffective for failing to introduce evidence of
Appellant's character for truthfulness and peacefulness.

VI. Trial counsel was ineffective for failing to adequately
cross-examine the Commonwealth's witnesses.

VII. Appellant recently learned that Loami, a Commonwealth witness,
lied to the police and at his trial. This information constituted
after-discovered evidence under 42 Pa.C.S.A. § 9542(a)(2)(vi)
and entitled him to a new trial.

*See* Appellant's Amended PCRA Petition, 4/8/16, at 3-6. Herein, Appellant

argues that the PCRA court erred in dismissing his PCRA petition without a

hearing. We disagree.

Our standard of review is as follows:

> As a general proposition, an appellate court reviews the PCRA court's findings to see if they are supported by the record and free from legal error. [This C]ourt's scope of review is limited to the findings of the PCRA court and the evidence on the record [] viewed in the light most favorable to the prevailing party.

*Commonwealth v. Hammond*, 953 A.2d 544, 556 (Pa. Super. 2008) (citations and quotations omitted).

There "is no absolute right to an evidentiary hearing on a PCRA petition." *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008). Rather, a PCRA court "has the discretion to dismiss a petition without a hearing when the court is satisfied 'that there are no genuine issues concerning any material fact.'" *Commonwealth v. Roney*, 79 A.3d 595, 604 (Pa. 2013) (citation omitted). Notably, this rule applies to claims of ineffective assistance. *See id.* ("To prevail in an ineffectiveness claim, the petitioner must plead and prove, by a preponderance of the evidence, the following three elements: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice as a result of counsel's action or inaction"). Indeed, our Supreme Court previously "stress[ed] that an evidentiary hearing 'is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim of ineffectiveness.'" *Id.* at 604, *quoting Commonwealth v. Jones*, 811 A.2d 994, n.8 (Pa. 2002). Accordingly, if the PCRA court can determine – without an evidentiary hearing – that "one of the prongs [of an ineffective assistance claim] is not met, then no purpose would be advanced by holding an evidentiary hearing." *Jones*, 942 A.2d at 906.

First, Appellant argues that trial counsel was ineffective for inadequately developing the defense of diminished capacity.[2] Appellant, in essence, claims that trial counsel failed to inform him, prior to trial, that he needed to testify that he "lost his faculties and ability to perceive the situation" during the shooting to be entitled to a jury instruction on diminished capacity by way of voluntary intoxication. Appellant's Brief at 22. Appellant's claim is nonsensical.

Our Supreme Court previously explained:

A defense of diminished capacity negates the element of specific intent, and thus mitigates first-degree murder to third-degree murder. **Commonwealth v. Williams**, 980 A.2d 510, 527 (Pa. 2009); **Commonwealth v. Saranchak**, 866 A.2d 292, 299 (Pa. 2005).

The mere fact of voluntary intoxication does not give rise to a diminished capacity defense. Rather, to prove diminished capacity due to voluntary intoxication, a defendant must show

_____

[2] In Appellant's amended PCRA Petition, he claimed that trial counsel was ineffective for failing to substantially develop a diminished capacity defense. Appellant's Amended PCRA Petition, 4/6/18, at 3. In his motion to amend his amended PCRA petition, Appellant attempted to clarify this argument by alleging that trial counsel "failed to research, counsel and prepare [Appellant] and defense witnesses on the defense of diminished capacity" to ensure that "sufficient evidence" was presented to the jury and that the trial court instructed the jury on the defense of diminished capacity. Appellant's Motion to Amend Amended PCRA Petition, 1/22/19, at 6. In his appellate brief, Appellant claims that trial counsel failed to substantially develop the defense diminished capacity. Appellant's Brief at 21-22. Appellant also now argues that trial counsel was ineffective for failing to substantially develop the defense of justification. **Id.** at 23-24. We will only address Appellant's claim that trial counsel failed to develop the defense of diminished capacity, as his claim regarding the defense of justification is waived. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

- 6 -

that he was overwhelmed to the point of losing his faculties and sensibilities. *Commonwealth v. Blakeney*, 946 A.2d 645, 653 (Pa. 2008); *Commonwealth v. Spotz*, 896 A.2d 1191, 1218 (Pa. 2006).

\*\*\*

[The Supreme Court] has previously made clear that a jury instruction regarding diminished capacity due to voluntary intoxication is justified only when the record contains evidence that the accused was intoxicated to the point of losing his or her faculties or sensibilities. *Commonwealth v. Reiff*, 413 A.2d 672, 674 (Pa. 1980). Evidence that the accused ingested alcohol or other intoxicating drug[s]—without more—does not warrant a voluntary intoxication instruction. *Id.* In *Reiff*, the evidence showed that the appellant had consumed approximately two and one-half quarts of beer during the several hours before he fatally shot a man, but there was no evidence that the appellant exhibited any signs of intoxication or unusual behavior. *Id.* at 673.

Accordingly, [the Supreme Court] held that the trial court did not err in refusing to give a jury instruction as to diminished capacity due to voluntary intoxication. *Id.* at 674; *see also Commonwealth v. Marinelli*, 690 A.2d 203, 220–221 (Pa. 1997) (holding that the trial court did not err by refusing to give a voluntary intoxication charge because, even though there was testimony that the appellant had consumed some alcohol prior to the killing, there was no evidence that the appellant had been overwhelmed or overpowered by alcohol).

*Commonwealth v. Padilla*, 80 A.3d 1238, 1263–1264 (Pa. 2013) (parallel citations omitted).

Herein, Appellant basically argues that trial counsel was ineffective because he did not ensure that Appellant testified that, on the night of the shooting, he was so intoxicated that he "lost[] his [] faculties or sensibilities." *Id.*; *see also* Appellant's Brief at 22. Trial counsel, however, cannot instruct a defendant to testify to something that did not occur. At trial, Appellant testified in his own defense and provided a detailed explanation of the night's

- 7 -

events. In particular, Appellant explained that, on the night of the shooting, he was intoxicated and used cocaine. In addition, however, Appellant claimed that he "remembered exactly what happened" prior to and during the fight with Victim and that he acted in self-defense. N.T. Trial, 1/23/15, at 358-359. Specifically, Appellant testified on cross-examination as follows:

**[Commonwealth]**: ...[D]o you remember where you went after the fight?

**[Appellant]**: Marybeth's.

**[Commonwealth]**: You went to her house; correct?

**[Appellant]**: Yes, with my cousin [Victor].

**[Commonwealth]**: And you were with your cousin and you walked there; correct?

**[Appellant]**: Yes.

**[Commonwealth]**: Once you got there—well, first of all, how long did it take to get to her house from the fight?

**[Appellant]**: I don't know.

**[Commonwealth]**: You don't know? So you remember who attacked you; correct?

**[Appellant]**: Yes.

**[Commonwealth]**: You remember why they attacked you; correct?

**[Appellant]**: Yes, I remember. I imagine it was because of—yes. Yes. I remember. I remember.

**[Commonwealth]**: And you remember that Alex made you jump over a fence; correct?

**[Appellant]**: Yes.

**[Commonwealth]**: And you remember that [Victim] came out of the house; correct?

- 8 -

**[Appellant]**: Yes.

**[Commonwealth]**: And you knew everyone at the party; correct?

**[Appellant]**: Yes.

**[Commonwealth]**: And you even remember what you had to drink at the party, didn't you?

**[Appellant]**: Yes.

**[Commonwealth]**: And you remember exactly how that fight went down; correct?

**[Appellant]**: The first fight?

**[Commonwealth]**: The second fight.

**[Appellant]**: The second fight I was forced to fight.

**[Commonwealth]**: But you remember exactly what happened; correct?

**[Appellant]**: Yes.  That [Alex] forced me to fight.

**[Commonwealth]**: Okay.  And you remember—in fact you testified as to what you were thinking at the time you shot [Victim,] correct?  You shot [Victim], you remember why you did it; correct?

**[Appellant]**: Because I was afraid for my life.

**[Commonwealth]**: Because you were afraid for your life?

**[Appellant]**: I didn't want him to get close to me to take the gun away from me.

**[Commonwealth]**: Okay.  So you had the gun; correct?

**[Appellant]**: I took it away from [Victim].

**[Commonwealth]**: You took—

**[Appellant]**: From his hands.

**[Commonwealth]**: You took the gun from [Victim's] hands?

**[Appellant]**: Yes.

*Id.* at 358-360. Thus, as this Court concluded on Appellant's direct appeal, Appellant's "own testimony demonstrated that he was not intoxicated to the point of losing his faculties" and, as such, Appellant was not entitled to a "jury instruction regarding diminished capacity." *Delvalles-Vincente*, 2016 WL 5210899, at *5. Accordingly, Appellant's claim lacks merit.

Second, Appellant claims that trial counsel provided ineffective assistance by "presenting dual defenses of diminished capacity and justification." Appellant's Brief at 21. Appellant, however, fails to develop this issue with meaningful argument and citation to pertinent authority. Instead, Appellant baldly asserts that trial counsel presented "inconsistent and irreconcilable" defenses and devotes the remainder of his argument to his claim that trial counsel failed to substantially develop both defenses. *Id.* As such, we conclude that Appellant's claim is waived. *See Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (explaining that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

Third, Appellant argues that trial counsel provided ineffective assistance because he did not call Cindy and Manuel as witnesses in Appellant's trial. Per Appellant, both individuals witnessed the shooting and could have established that Appellant's "perception and memory" were "negatively impaired" and, as such, support a diminished capacity defense. Appellant's Brief at 25. Appellant's claim lacks merit.

As our Supreme Court explained:

When raising a failure to call a potential witness claim, the PCRA petitioner satisfies the performance and prejudice requirements of [an ineffective assistance of counsel claim] by establishing that:

(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Washington*, 927 A.2d 586, 599 (Pa. 2007). To demonstrate [] prejudice, the PCRA petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." *Commonwealth v. Gibson*, 951 A.2d 1110, 1134 (Pa. 2008); *see also Commonwealth v. Chmiel*, 889 A.2d 501, 546 (Pa. 2005) ("Trial counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent witness' testimony would have been beneficial or helpful in establishing the asserted defense.").

*Commonwealth v. Johnson*, 966 A.2d 523, 536 (Pa. 2009) (parallel citation omitted).

Herein, Appellant's claim lacks merit because, contrary to his current assertion, Appellant testified that Cindy and Manuel left the party before the shooting occurred. Indeed, after Appellant described the circumstances of the first altercation with him and Victim, he explained:

**[Appellant]:** [After the initial fight,] I saw [Alex] picked up a gun, I . . . went running outside.

**[Defense counsel]:** Did you leave the party at that time?

**[Appellant]:** Yes, outside of the house.

**[Defense counsel]:** [W]hat happened then?

- 11 -

> **[Appellant]:** I said to my cousin Manuel, Manuel, get on with Cindy. I said to Manuel, let's go, but [V]ictor is inside and we can [not] leave [him].
>
> **[Defense counsel]:** And then what happened then?
>
> **[Appellant]:** Cindy left with Manuel[.]

N.T. Trial, 1/22/15, at 330. Thus, as neither Cindy nor Manuel were present at the time of the shooting, they could not provide testimony about Appellant's mental state and support a defense of diminished capacity. Accordingly, Appellant's claim fails for lack of merit.

Fourth, Appellant claims that trial counsel was ineffective for failing to object to the admission of statements made by various Commonwealth witnesses as inadmissible hearsay. Specifically, Appellant argues that the following statements were inadmissible:

   I. Jochebed Pacheco-Morales ("Jochebed") and Loami's testimony that, after the second fight, Victim tried to hug Appellant.

   II. Loruma Pacheco-Morales's ("Loruma") testimony that, after the shooting, her son, Juan Ismeal ("Ismeal") screamed "they shot him in [the] back" and that Victim "cried for God to forgive him."

   III. Testimony offered by Loruma, Juan Rosario-Pacheco ("Juan"), Alex, Loami, and Jochebed that the Victim asked Appellant to forgive him.

***See generally*** Appellant's Brief at 27-28.

Pennsylvania Rule of Evidence 801 defines hearsay as follows:

**Rule 801.  Definitions That Apply to This Article**

> **(a) Statement.** "Statement" means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion.

**(b) Declarant.** "Declarant" means the person who made **the statement.**

**(c) Hearsay**. "Hearsay" means a statement that

**(1)** the declarant does not make while testifying at the current trial or hearing; and

**(2)** a party offers in evidence to prove the truth of the matter asserted in the statement.

Pa.R.E. 801. "Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802.

Notably, Pa.R.E. 803 outlines multiple exceptions to the prohibition against hearsay. One such exception, known as an excited utterance, is a

spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person had just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.... Thus, it must be shown first, that [the declarant] had witnessed an event sufficiently startling and so close in point of time as to render her reflective thought processes inoperable and, second, that her declarations were a spontaneous reaction to that startling event.

*Commonwealth v. Stokes*, 615 A.2d 704, 712 (Pa. 1992). An excited utterance also "need not describe or explain the startling event or condition; it need only **relate** to it." Pa.R.E. Rule 803(2) *cmt*. (emphasis original). Witnessing a shooting is sufficient as a startling event or condition. *See e.g.*, *Commonwealth v. Hood*, 872 A.2d 175 (Pa. Super. 2005) (finding where witnesses made a 911 call and described a shooting, the shooting was

sufficient as a startling event or condition). Further, there is no clearly defined time limit within which the statement must be made after the startling event; the determination is factually driven, made on a case-by-case basis. ***Commonwealth v. Wholaver***, 989 A.2d 883, 906–07 (Pa. 2010).

Appellant first argues that trial counsel was ineffective for not objecting to Loami's and Jochebed's testimony that Victim attempted to hug Appellant after the second fight. ***See*** N.T. Trial, 1/21/15, at 210-211 and 263. Contrary to Appellant's claim, this is not hearsay. Indeed, as defined in Pa.R.E. 801, hearsay is a statement made out of court, offered for the truth of the matter asserted. For non-verbal conduct to be considered a statement pursuant to Rule 801(a), "the person [must] intend[] it as an assertion." Pa.R.E. 801(a). The testimony established that Victim attempted to hug Appellant to try to diffuse the situation and, as such, this non-verbal conduct does not constitute hearsay. Accordingly, trial counsel was not ineffective for failing to object to this testimony.

Appellant next claims that trial counsel should have objected to Loruma's statement that, after the shooting, her son, Ismeal, screamed "they shot him in [the] back." N.T. Trial, 1/20/15, at 141. Appellant is correct that this statement is hearsay because Ismeal made the statement at a time other than while testifying at Appellant's trial and it was offered for its truth. Appellant, however, is incorrect in his assertion that Ismeal's statement was inadmissible. Rather, the statement qualifies as an excited utterance. Indeed, Loruma testified as follows:

- 14 -

> **[Commonwealth]**:  After Carlos was shot, what happened next?
>
> **[Loruma]**:  My son started screaming.
>
> **[Commonwealth]**:  Okay.  And what happened next?
>
> **[Loruma]**: That [Appellant] had shot [Carlos] in the back.

*Id*.  Thus, Ismeal made this statement immediately following the shooting – a startling event - and it clearly relates to the shooting.  Accordingly, as this statement was admissible, trial counsel was not ineffective for failing to object to its admission.

Appellant also argues that trial counsel was ineffective for failing to object to multiple Commonwealth witnesses testifying that, after the second fight, Victim asked Appellant to forgive him and that after the shooting, Victim asked God to forgive him.  *See* N.T. Trial, 1/20/15, at 100-102, and 106; N.T. Trial, 1/21/15, at 139, 187, 210, 260, at 263.  Upon review, we conclude that Appellant's claim fails for lack of prejudice.  Appellant cannot demonstrate that "there is a reasonable probability that the outcome of the challenged proceedings would have been different" because, during trial, Appellant pursued a justification defense and claimed that he acted in self-defense. *Hammond*, 953 A.2d at 556.  As such, the fact that multiple individuals testified that Victim asked for God's and Appellant's forgiveness tended to support the notion that the Victim, not Appellant, was the first aggressor. Because Appellant cannot establish prejudice, his claim fails.

Fifth, Appellant claims that trial counsel provided ineffective assistance because he failed to introduce evidence of Appellant's reputation for

truthfulness and peacefulness. Appellant claims that witnesses were "ready to testify on [his] behalf for his good reputation in the community for truth, peacefulness and non[-]violence" and, as such, counsel "was ineffective for failing to call character witnesses." Appellant's Brief at 30.

"Failure to present available character witnesses may constitute ineffective assistance of counsel." *Commonwealth v. Harris*, 785 A.2d 998, 1000 (Pa. Super. 2001). Defense counsel, however, is ineffective for failing to introduce evidence of a client's good character only when his or her credibility as a witness is "of paramount importance." *Commonwealth v. Weiss*, 606 A.2d 439, 442 (Pa. 1992) ("In a case such as this, where there are only two direct witnesses involved, credibility of the witnesses is of paramount importance, and character evidence is critical to the jury's determination of credibility"). Generally, a defendant's character is only central to the truth-determining process when the Commonwealth bases its case principally on the credibility of its witnesses. *See, e.g.*, *Commonwealth v. Keaton*, 56 A.3d 1050, 1072-73 (Pa. 2012); *Commonwealth v. Johnson*, 966 A.2d 523, 538 (Pa. 2009); *Commonwealth v. Morgan*, 739 A.2d 1033, 1038 (Pa. 1999). To support such an ineffectiveness claim for failing to proffer character evidence, a petitioner must demonstrate: 1) the witness existed; 2) the witness was available; 3) counsel knew of, or should have known of, the existence of the witness; 4) the witness was willing to testify for the defense; and 5) the absence of the testimony was so prejudicial to petitioner so as to

deny him or her a fair trial. *Commonwealth v. Miner*, 44 A.3d 684, 687 (Pa. Super. 2012).

Herein, Appellant baldly asserts that the "introduction of character evidence had a reasonable probability of resulting in a different verdict favorable for [the] defense." Appellant's Brief at 30. Appellant does not show how or why the testimony of character witnesses could have altered the outcome of the proceeding. *See id*. Such an undeveloped ineffective assistance of counsel claim does not entitle Appellant to relief. *Commonwealth v. Wharton*, 811 A.2d 978, 986 (Pa. 2002) ("Claims of ineffective assistance of counsel are not self-proving."). Accordingly, we conclude that Appellant failed to demonstrate that trial counsel's failure to present character witnesses during his trial prejudiced him.

Sixth, Appellant argues that trial counsel was ineffective for failing to adequately cross-examine the Commonwealth's witnesses. Specifically, Appellant argues that trial counsel failed to effectively cross-examine Loruma, Juan, Alex, Loami, and Jochebed on "their motives to lie," familial relationship with each other, and "opportunity to fabricate a joint story against [Appellant]." Appellant's Brief at 31-32. In addition, Appellant claims that trial counsel was ineffective for failing to cross-examine Officer Allen Hinty, Stephanie Horner, and Officer Gregory Schick and his minimal cross-examination of other "professional" Commonwealth witnesses. *Id*. at 33-36.

While Appellant spends an inordinate amount of time dissecting each question trial counsel asked during cross-examination, Appellant utterly fails to show that trial counsel lacked a reasonable basis for his chosen action and that he suffered prejudice. Indeed, Appellant's claim that trial counsel was ineffective in his cross-examination of the Commonwealth's witnesses is nothing more than a bald assertion. "[B]oilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." *Commonwealth v. Paddy*, 15 A.3d 431, 443 (Pa. 2011). Accordingly, Appellant's underdeveloped claim of ineffectiveness fails.

Lastly, Appellant argues that the PCRA court erred in dismissing his PCRA petition without an evidentiary hearing to address his claim of after-discovered evidence. The evidence in question includes information obtained from Jonathan Pachecho-Morales ("Jonathan"), Loami's brother. Per Appellant, Jonathan would testify that, after Appellant's trial, Loami informed Jonathan that "he lied to police and at trial about how the events occurred leading to the death of [Victim]." Appellant's Amended PCRA Petition, 4/6/2018, at 6.

Under the PCRA, to be entitled to post-conviction collateral relief upon a claim of after-discovered evidence, the petitioner must plead and prove that his conviction or sentence resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42

Pa.C.S.A. § 9543(a)(2)(vi). As our Supreme Court has held, Section 9543(a)(2)(vi) is satisfied where the PCRA petitioner establishes that:

> (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.

***Commonwealth v. Washington***, 927 A.2d 586, 595 (Pa. 2007); ***see also***

***Commonwealth v. Abu–Jamal***, 720 A.2d 79, 94 (Pa. 1998). Herein, the proffered testimony by Jonathan would only be used to impeach Loami's credibility. Therefore, the testimony cannot be a basis for a claim of after-discovered evidence.

Based upon the forgoing, we affirm the PCRA court's dismissal of Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/08/2020

- 19 -